## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

TRISTAN BROUSSARD,

        Plaintiff,

v.

FIRST TOWER LOAN, LLC d/b/a TOWER
LOAN OF LAKE CHARLES,

        Defendant.

Civil Action No.:

Section:

**COMPLAINT AND
JURY DEMAND**

### COMPLAINT OF SEX DISCRIMINATION IN VIOLATION
### OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

Plaintiff Tristan Broussard ("Plaintiff" or "Mr. Broussard"), by and through his

undersigned counsel, files this Complaint and Jury Demand against Defendant First Tower Loan,

LLC d/b/a Tower Loan of Lake Charles ("Defendant" or "Tower Loan").

### INTRODUCTION

1.      This suit arises from Tower Loan's decision to terminate Plaintiff Tristan

Broussard because of his sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§2000e *et seq.* ("Title VII").

2.      In February 2013, Tower Loan extended a job offer to Mr. Broussard to work as a

Manager Trainee in its Lake Charles, Louisiana branch.  At the time that Tower Loan made that

job offer, Mr. Broussard's gender, gender identity, and gender expression were male.

3.      Shortly after Mr. Broussard began working for Tower Loan in March 2013, Mr.

Broussard's supervisor at the Lake Charles branch Leah Sparks reviewed his employment

paperwork and noticed that his driver's license listed his sex as female.  Ms. Sparks asked Mr.

Broussard to explain why his driver's license listed his sex as female, and Mr. Broussard

truthfully responded that he is a transgender man.

4.      Less than a week after Tower Loan learned of the sex listed on Mr. Broussard's driver's license and that Mr. Broussard is a transgender man, Tower Loan Vice President David Morgan traveled to Lake Charles to meet with Mr. Broussard and his supervisor.  Mr. Morgan informed Mr. Broussard that he could continue working at Tower Loan only if Mr. Broussard signed a written statement agreeing to act and be treated as female rather than as male while working for Tower Loan, including by dressing as female.  Because Mr. Broussard is a transgender man and could not so agree, he was terminated from his position at Tower Loan.

5.      Tower Loan's decision to terminate Mr. Broussard because he is a transgender man, and because of his inability to conform to Tower Loan's stereotypical expectations of gender and its requirements that he should agree to be treated as female, including by dressing and conducting himself as female, violates Title VII's prohibition on employment discrimination because of sex.  Title VII makes it unlawful for employers to discriminate against their employees or applicants for employment because of their sex, which includes discrimination based on a person's gender identity or transgender status; because a person has undergone, is undergoing, or intends to undergo a gender transition; or because a person fails to conform to gender- or gender-based stereotypes.  In terminating Mr. Broussard for these reasons, Tower Loan violated Title VII.

## PARTIES

6.      Plaintiff Tristan Broussard is a 21-year-old resident of Lake Charles, Louisiana. Mr. Broussard is and was well qualified to serve as a Manager Trainee at Tower Loan.

7.      Defendant Tower Loan is a limited liability company that maintains its principal Louisiana business establishment in Hammond, Louisiana.  At all relevant times, Tower Loan

2

has employed at least 15 employees, has done business within this District, and has been an

employer engaged in an industry affecting commerce.

## JURISDICTION AND VENUE

8.    This Court has federal question jurisdiction under 28 U.S.C. §1331 and 28 U.S.C.

§1343.

9.    Venue is proper in this District because the unlawful acts of employment

discrimination described herein occurred within Louisiana, and Tower Loan is found and

maintains its primary Louisiana business establishment within this District.  42 U.S.C. §2000e-

5(f)(3).

## FACTS

10.    Tower Loan is a privately owned finance company that operates more than 180

branches in five States, including Louisiana.  It employs more than 700 individuals and serves

more than 200,000 customers.  Its primary business is consumer installment lending.

11.     In February 2013, Tower Loan sought applicants for a Manager Trainee position

within its Lake Charles, Louisiana branch.  Manager Trainees are generally responsible for

lending, collecting, assisting with branch management, reviewing contracts, providing customer

service, and assisting with hiring, training, and staff development.

12.    Mr. Broussard applied for the Lake Charles Manager Trainee position in early

February 2013.  Mr. Broussard was well qualified for the position due to his previous sales

experience dealing directly with clients and customers.  Mr. Broussard was excited about the

possibility of working for Tower Loan because of the increased salary he would receive if hired,

the potential for growth and advancement within the company, and the possibility that he would

be relocated from Lake Charles following completion of the training period.

3

13.     Leah Sparks, the manager of Tower Loan's Lake Charles branch, interviewed Mr. Broussard for the Manager Trainee position on or about February 25, 2013.  During the interview, Ms. Sparks told Mr. Broussard that she was impressed with his qualifications and disposition, and stated that Mr. Broussard was a top candidate for the Manager Trainee position.

14.     Later that same day, Ms. Sparks called Mr. Broussard to offer him the Manager Trainee position.  Mr. Broussard accepted the position.

15.     During all of these interactions, Ms. Sparks interacted with and treated Mr. Broussard as male.

16.     Mr. Broussard began working for Tower Loan on March 4, 2013.  Mr. Broussard excelled in performing all of the duties of a Manager Trainee during his first week of employment at Tower Loan.  Ms. Sparks, his immediate supervisor, had many positive things to say about Mr. Broussard.  To Mr. Broussard's knowledge, there were never any complaints or negative comments from customers about his work at Tower Loan.

17.     Throughout this time period, Ms. Sparks and other Town Loan employees and clients interacted with and treated Mr. Broussard as male.

18.     Mr. Broussard is a transgender man; his gender identity is male, and his clothing and appearance are male.

19.     For transgender people such as Mr. Broussard, their birth sex and their gender identity are different.  Gender identity is a person's identification as male or female.  Everyone has a gender identity and in most cases, a person's gender identity aligns with his or her birth sex.  As every major medical and mental health association recognizes, however, some people have a gender identity that does not match their birth sex.

20.     Transgender people experience varying levels of psychological distress as a result of the disconnect between their gender identity and birth sex.  This distress, often referred to as Gender Dysphoria, is a serious medical condition and there are both nationally and internationally recognized standards of care for the treatment of Gender Dysphoria.

21.     To alleviate the distress associated with Gender Dysphoria, many transgender people undergo gender transition to live in a manner consistent with their gender identity.  The process can include both social and medical components.  Medical treatments may include hormone-replacement therapy and a variety of surgeries, which may or may not include genital reconstructive surgery.

22.     Mr. Broussard has known that he is male for as long as he can remember.  He came out to his friends and family as transgender in August 2011 and has been living his life as a man, consistent with his male gender identity, since his transition in September 2011.  He has been on testosterone therapy since May 2012, which has profoundly altered his body, causing him to acquire male secondary sex characteristics and to be easily recognized as male by others.

23.     While Mr. Broussard was completing the paperwork for new employees on March 4, 2013, Tower Loan required Mr. Broussard to provide a valid form of identification.  Mr. Broussard provided his driver's license.

24.     Mr. Broussard's driver's license lists his sex as female.

25.     When Ms. Sparks noticed that Mr. Broussard's driver's license listed his sex as female, she asked Mr. Broussard about the listed sex.  Mr. Broussard explained that he is a transgender man.

26.     On information and belief, Ms. Sparks notified Tower Loan Vice President David Morgan of the sex listed on Mr. Broussard's driver's license.  Mr. Morgan, together with Tower

Loan's Director of Human Resources Lynne Card and possibly other employees, determined that, despite Mr. Broussard's identity as a transgender man, Tower Loan would require him to be treated as female, including requiring him to dress and conduct himself as female.

27.     On March 11, 2013, Mr. Morgan traveled to Tower Loan's Lake Charles office. When Mr. Broussard learned that Mr. Morgan would be visiting the Lake Charles branch, he assumed that Mr. Morgan was conducting a routine assessment of office operations, and did not know the actual reason for the visit.  Mr. Broussard was excited to meet Mr. Morgan, because Mr. Morgan was a member of Tower Loan's upper management.

28.     After arriving, Mr. Morgan asked Mr. Broussard and Ms. Sparks to meet with him in a back conference room, where he handed Mr. Broussard a copy of the company's dress code. Mr. Broussard did not understand why he had been given the company dress code.  There had been no complaints about his dress, and no one had expressed any concern regarding his compliance with the company dress code.  Mr. Broussard had complied with the company dress code at all times while working at Tower Loan.

29.     Mr. Morgan explained that he was providing Mr. Broussard with the dress code for female employees, and stated that Mr. Broussard was not complying with the dress code provisions specifically governing how female employees must dress.

30.     Mr. Broussard told Mr. Morgan that he lives and identifies as male.  Mr. Morgan stated that the company nonetheless would require him to dress as female.

31.     When Mr. Broussard realized that Mr. Morgan was going to penalize or fire him because of his transgender status, Mr. Broussard was shocked and became extremely distraught and concerned.

6

32.     Immediately thereafter, Mr. Morgan presented Mr. Broussard with a written statement and told Mr. Broussard that he had to sign the statement if he wanted to continue working at Tower Loan.  The statement said:

> I understand that my preference to act and dress as male, despite having been born a female, is not something that will be in compliance with Tower Loan's personnel policies.  I have been advised as to the proper dress for females and also have been provided a copy of the female dress code.  I also understand that when meetings occur that require out of town travel and an overnight room is required, I will be in [sic] assigned to a room with a female.

A true and correct copy of the written agreement presented to Mr. Broussard is attached hereto as **Exhibit A**.

33.     After providing Mr. Broussard with the written agreement, Mr. Morgan made it clear to Mr. Broussard that he would be fired if he did not accept and sign the agreement.

34.     Mr. Broussard refused to sign the agreement, and repeatedly explained that he could not agree to be treated as female, including having to dress and conduct himself as female, because he is male—specifically, a transgender male.

35.     Mr. Morgan then stated that if Mr. Broussard "had some surgeries and we can see some results," then Tower Loan may consider hiring him again.

36.     Because Mr. Broussard would not sign Tower Loan's written agreement, Tower Loan terminated Mr. Broussard's employment.

37.     Ms. Sparks called Mr. Broussard the following day to apologize for what had occurred and to tell Mr. Broussard that she did not know that he was going to be terminated.  She told him that she thought he was a good employee.

38.     Tower Loan had no business reason for requiring Mr. Broussard, a transgender man, to be treated as female and to dress and conduct himself as female as a condition of keeping

his job, nor would it even have been possible for him to do so, as his physical appearance and gender identity are male.

39.     A reasonable person who was directed by his employer to agree to be treated as female, including agreeing to dress and conduct himself as female, even though his gender identity is male would resign his employment rather than attempt to abide by the employer's demands, and being asked to agree to such a demand is equivalent to being fired.

## EEOC PROCEEDINGS

40.     On August 27, 2013, Mr. Broussard's counsel at the National Center for Lesbian Rights and Delaney & Robb Attorneys at Law LLC filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC" or "Commission") on Mr. Broussard's behalf.  The Charge alleged that Mr. Broussard's termination from Tower Loan constituted unlawful discrimination on the basis of his sex, change of sex, sex stereotypes, and gender identity, in violation of Title VII and the Louisiana Employment Discrimination Law.  A true and correct copy of the EEOC charge is attached hereto as **Exhibit B**.

41.     On December 2, 2014, the EEOC issued its determination regarding the merits of Mr. Broussard's charge.  The Commission concluded that "the evidence supports a reasonable cause finding that [Mr. Broussard] was subjected to discrimination based on sex, transgender male, in that [Mr. Broussard] was required by [Tower Loan's] company policy to be treated as belonging to a gender with which [Mr. Broussard] does not identify, despite [Mr. Broussard] placing [Tower Loan] on notice of [his] desire to be treated as a member of the gender with which [he] identifies."  The Commission found that Tower Loan had "failed to meet its burden to show that the policies in question constituted a bona fide occupational qualification reasonably necessary to the normal operation of its particular business enterprise," and that Mr. Broussard

"was discharged or constructively discharged by [Tower Loan]."  A true and correct copy of the EEOC's Determination is attached hereto as **Exhibit C**.

42.     On January 5, 2015, Mr. Broussard requested that the EEOC issue a Notice of Right To Sue.  The EEOC issued a Notice of Right To Sue on January 20, 2015.  A true and correct copy of the Notice of Right To Sue is attached hereto as **Exhibit D**.

## COUNT ONE

### Sex Discrimination in Violation of Title VII
### of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

43.     Mr. Broussard realleges and incorporates herein by reference the foregoing paragraphs.

44.     Tower Loan engaged in unlawful employment practices at its Lake Charles, Louisiana branch, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. §2000e-2(a)(1), by terminating or constructively terminating Mr. Broussard because of sex.

45.     Tower Loan's decision to terminate Mr. Broussard was based on sex.  Tower Loan fired Mr. Broussard because he is a transgender man, because he is undergoing or has undergone a gender transition, and/or because he did not conform to Tower Loan's gender-based preferences, expectations, or stereotypes that a transgender man should be treated as female and should dress and conduct himself as female.

46.     The effect of Tower Loan's unlawful employment practices was to deprive Mr. Broussard of equal employment opportunities and otherwise adversely affect his status as an employee, because of his sex.

47.     Tower Loan's unlawful employment practices were intentional and done with malice or with reckless indifference to Mr. Broussard's rights under Title VII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Tristan Broussard prays for the following relief:

a.      A declaratory judgment that the practices complained of herein are unlawful and violate Title VII, 42 U.S.C. §2000e *et seq*.;

b.      A permanent injunction against Tower Loan and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with Tower Loan, prohibiting them from engaging in unlawful sex discrimination against employees or applicants for employment, including on the basis of gender identity;

c.      Back pay and reinstatement or front pay (including interest and benefits), and other affirmative relief necessary to eradicate the effects of Tower Loan's unlawful employment practices;

d.      Compensatory and punitive damages;

e.      Reasonable attorneys' fees and all expenses and costs of this action;

f.      Pre-judgment interest; and

g.      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Mr. Broussard demands a trial by jury of all issues so triable in this action.

April 13, 2015

/s/ Ryan P. Delaney
Ryan P. Delaney

10

Ryan P. Delaney
Delaney and Robb Attorneys at Law, LLC
2800 Veterans Boulevard, Suite 213
Metairie, LA  70005
Telephone:     (504) 267-9700
Email: ryan@delaneyandrobb.com

James M. Finberg (admission *pro hac vice* forthcoming) (Trial Attorney)
Barbara J. Chisholm (admission *pro hac vice* forthcoming)
P. Casey Pitts (admission *pro hac vice* forthcoming)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone:     (415) 421-7151
Facsimile:     (415) 362-8064
Email: jfinberg@altber.com
        bchisholm@altber.com
        cpitts@altber.com

Shannon P. Minter (admission *pro hac vice* forthcoming)
Amy Whelan (admission *pro hac vice* forthcoming)
Asaf Orr (admission *pro hac vice* forthcoming)
National Center for Lesbian Rights
870 Market Street, Suite 370
San Francisco, CA  94102
Telephone:     (415) 392-6257
Email: sminter@nclrights.org
        awhelan@nclrights.org
        aorr@nclrights.org

David Dinielli (admission *pro hac vice* forthcoming)
Samuel Wolfe (admission *pro hac vice* forthcoming)
A. Chinyere Ezie (admission *pro hac vice* forthcoming)
Southern Poverty Law Center
400 Washington Avenue
Montgomery, Alabama  36104
Telephone:     (334) 956-8200
Facsimile:     (334) 856-8481
Email: david.dinielli@splcenter.org
        sam.wolfe@splcenter.org
        chinyere.ezie@splcenter.org

*Counsel for Plaintiff Tristan Broussard*

11