UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

TRISTAN BROUSSARD                              CIVIL ACTION

VERSUS                                         NO: 15-1161

FIRST TOWER LOAN, LLC                          SECTION: "J" (4)

**ORDER AND REASONS**

Before the Court is a *Motion to Dismiss for Improper Venue or, Alternatively, to Transfer Venue* **(Rec. Doc. 52)** filed by Defendant, First Tower Loan, LLC ("Tower") and two oppositions thereto **(Rec. Doc. 67; Rec. Doc. 74)** filed by Plaintiff, Tristan Broussard ("Broussard"), and Intervenor, the Equal Employment Opportunity Commission ("EEOC"). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

**FACTS AND PROCEDURAL BACKGROUND**

This litigation derives from Broussard's employment with Tower and subsequent termination. Broussard is twenty-one years old and a resident of Lake Charles, Louisiana. (Rec. Doc. 1 at 2.) In February 2013, Tower offered Broussard a job as a Manager Trainee in its Lake Charles office. *Id.* at 1. Broussard is a transgender man, meaning that he outwardly appears to be male and his gender identity is male. *Id.* at 4. However, his birth

1

sex is female. *Id.* at 4. As Broussard completed paperwork for his employment with Tower, his supervisor, Leah Sparks, noticed that his driver's license listed his sex as female. *Id.* at 5.

On March 11, 2013, Tower Loan Vice President David Morgan visited the Lake Charles office. *Id.* at 6. Morgan gave Broussard a copy of the company's female dress code and informed Broussard that he must dress as a female because he was born female. *Id.* Morgan also presented Broussard with a written statement and told him that he must sign the statement or lose his job. *Id.* at 7. The statement said that Broussard's "preference to act and dress as male" was not "in compliance with Tower Loan's personnel policies." *Id.* Broussard refused to sign the agreement, and Tower subsequently terminated his employment. *Id.*

Broussard filed a discrimination claim with the EEOC on August 27, 2013. *Id.* at 8. The EEOC determined that Broussard's claim was meritorious and issued a Notice of Right to Sue on January 20, 2015. *Id.* at 8-9. Broussard filed the instant action on April 13, 2015. Meanwhile, Tower filed suit against Broussard in Mississippi state court. Broussard removed Tower's suit to the United States District Court for the Southern District of Mississippi. Upon Broussard's motion, the federal court transferred Tower's suit to this Court, which consolidated it with Broussard's case. (Rec. Doc. 36.)

The EEOC filed a Notice of Intent to Intervene on September 1, 2015. (Rec. Doc. 51.) The next day, Tower Loan filed the instant *Motion to Dismiss for Improper Venue or Alternatively, to Transfer Venue*. (Rec. Doc. 52.) Broussard filed opposition to this motion on September 15. (Rec. Doc. 67.) This Court granted the EEOC's Motion to Intervene on September 16, and the EEOC filed opposition to Tower's motion on September 29. (Rec. Docs. 70, 79). Subsequently, Tower filed a Motion for Leave to File Reply Memorandum. (Rec. Doc. 75.)

## **PARTIES' ARGUMENTS**

Tower challenges venue in this Court on two bases. First, Tower argues that Title VII's venue provisions require the claimant to bring suit in the district where the unlawful employment action occurred. Second, even if venue is proper in the Eastern District under Title VII, Tower argues that this Court should transfer the case to the Western District of Louisiana, which encompasses Lake Charles, because it is a more appropriate venue.

Broussard first argues that the statutory language of Title VII clearly provides that a claimant can bring suit in any district in the state where the unlawful employment action occurred. Second, he argues that Tower failed to demonstrate that transfer is warranted and that the multi-factor test

3

articulated by the Fifth Circuit supports the maintenance of his suit in this Court.

In its opposition, the EEOC joins and adopts Broussard's opposition. Further, it argues that the plain language of Title VII provides for venue in the Eastern District in this case. The EEOC also asserts that Tower has not met its burden of demonstrating that a transfer is warranted. As part of this argument, the EEOC emphasizes the importance of the plaintiff's venue selection in Title VII cases. Like Broussard, the EEOC also asserts that the multi-factor test does not support transfer to the Western District.

## **LEGAL STANDARD**

Congress has adopted special venue provisions for Title VII cases. *In re Horseshoe Entm't*, 337 F.3d 429, 432 (5th Cir. 2003) ("*Horseshoe II*"). Specifically,

> [A Title VII action] may be brought [1] in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, [2] in the judicial district in which the employment records relevant to such practice are maintained and administered, or [3] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but [4] if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3) (bracketed numbers added). When venue is challenged, the plaintiff has the burden of proving that the

4

chosen venue was proper. *Smith v. Fortenberry,* 903 F. Supp. 1018, 1020 (E.D. La. 1995).

Even when the plaintiff files suit in a proper venue, the district court may transfer a civil action to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The movant has the burden of showing that an alternative forum is more appropriate for the action. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). "The plaintiff's privilege to choose, or not to be ousted from, his chosen forum is highly esteemed." *Carpenter v. Parker Drilling Offshore USA, Inc.*, No. 05-265, 2005 WL 1432373, at *1 (E.D. La. June 16, 2005). Therefore, to overcome the plaintiff's choice of venue, the movant must show "good cause" for the transfer. *Volkswagen II*, 545 F.3d at 315. Good cause for the transfer exists when the transferee venue is clearly more convenient than the plaintiff's chosen venue. *Id.* In such a case, the court should grant the motion to transfer. *Id.*

When deciding a motion to transfer, the Fifth Circuit considers private and public interest factors first articulated by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). *Id.* The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of

compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*")). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (brackets in original). None of the factors are entitled to dispositive weight. *Id.*

## DISCUSSION

### A. Whether Plaintiff Filed Suit in a Proper Venue

This Court finds that the Eastern District of Louisiana is a proper venue for Broussard's action based on three considerations: (1) the plain language of Title VII's venue provision, (2) congressional intent, and (3) precedent from other district courts in the Fifth Circuit.

First, Title VII clearly states that venue is proper in any district in the state where the alleged unlawful employment actions occurred. 42 U.S.C. § 2000e-5(f)(3). When interpreting a statute, courts will primarily consider the plain meaning of the words used. *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253-54

6

(1992). When the words are unambiguous, the court must apply the statute as written. *Id.* at 255. Courts should give words their ordinary, plain meaning and should not construe a statute to render any clause, sentence, or word superfluous, void, or insignificant. *Corley v. United States*, 556 U.S. 303, 314 (2009).

Here, Title VII unambiguously provides for venue in any district court in Louisiana. The alleged discrimination based on sex took place in Tower's Lake Charles office. (Rec. Doc. 1 at 6-7.) Thus, by the plain language of the statute, venue is proper in any district court in Louisiana, including this Court. To decide otherwise would be to read out the words "any" and "in the State" from the statute.

Second, legislative history sheds light on Congress's intent to allow venue anywhere in the state where the unlawful acts occurred. The original version of the bill introduced in the House provided for venue in "the judicial district in which the unlawful employment practice is alleged to have been committed" or "in the judicial district in which the respondent has his principal office." 110 Cong. Rec. 2511 (1964). The Senate altered this language to provide for venue in "any district in the State where the practice occurred." 110 Cong. Rec. 12,723 (1964). This change reflects a deliberate choice by the Senate to expand the plaintiff's venue options.

Third, the majority of the district courts in the Fifth Circuit have held that venue is proper in any district in the state where the unlawful employment actions occurred. *See, e.g.*, *Wallace v. Bd. of Supervisors for the Univ. of La. Sys.*, No. 14-657, 2015 WL 1970514, at *2 (M.D. La. Apr. 30, 2015); *Coleman v. Trican Well Serv., L.P.*, 2015 WL 865153, at *2 (W.D. Tex. Feb. 27, 2015); *Davidson v. Weyerhaeuser Corp.*, No. 11-0636, 2011 WL 5402362, at *2-3 (W.D. La. Oct. 4, 2011); *Equal Emp't Opportunity Comm'n v. Parish Water Work's Co.*, 415 F. Supp. 124, 125 (E.D. La. 1976).

The Fifth Circuit has yet to decide the scope of Title VII's venue provision. *See Horseshoe II*, 337 F.3d at 430 (withdrawing previous decision, which held that venue in Title VII cases was proper only in the district where the employment practices occurred, not anywhere in the state). However, the Eleventh Circuit and Ninth Circuit have supported a more expansive reading of the statute, in line with the district court cases cited above. *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 504 (9th Cir. 2000); *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 654 n. 11 (11th Cir. 1993); *Richardson v. Ala. State Bd. of Ed.*, 935 F.2d 1240, 1248 (11th Cir. 1991). In lieu of binding Fifth Circuit precedent, this Court finds the decisions of these Circuit Courts persuasive.

Thus, the Eastern District of Louisiana is a proper venue for Broussard's suit. Tower's arguments for dismissal are unavailing.[1]

**B. Whether the Court Should Transfer to a More Appropriate Venue**

Even when the plaintiff files suit in a proper venue, the court may exercise its discretion to transfer the case to another district or division where the action might have been brought "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a); *Norman v. H&E Equip. Servs., Inc.*, 2015 WL 1281989, at *5 (M.D. La. Mar. 20, 2015). As mentioned above, the movant has the burden of demonstrating that the transferee venue is clearly more convenient than the venue chosen by the plaintiff. *Volkswagen II*, 545 F.3d at 315. In determining whether to transfer the case, the court will consider a number of private and public interest factors.

   *A. District Where the Action Might Have Been Brought*

As a threshold question, the Court must determine whether the Western District of Louisiana is a district "where the action might have been brought." Title VII clearly provides for venue in the Western District because (1) it is a judicial district in

---

[1] To the extent that the Court's decision is inconsistent with *EEOC v. Noble Drilling*, No. 04-1683, 2004 WL 2700289 (E.D. La. Nov. 19, 2004), that case is disavowed.

the state where the unlawful employment practices are alleged to have been committed and (2) it is a judicial district in which Broussard would have worked but for the unlawful practices. *See* 42 U.S.C. § 2000e-5(f)(3). Because Broussard could have originally filed suit in the Western District, the preliminary inquiry is satisfied.

### B. *Private Interest Factors*

As mentioned above, the private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. Each will be discussed in turn.

*(1)    Access to Proof*

When analyzing the first factor, courts consider the distance between the current location of the evidence and the trial venue. *MTG Gaming, Inc. v. WMS Gaming, Inc.*, 978 F. Supp. 2d 647, 668 (S.D. Miss. 2013). This analysis turns on "which party will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues." *Id.* Typically, documents concerning corporate parties are located at the corporation's

10

headquarters. *Id.* at 669 (citing *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)).

In this case, the relevant documents are in Tower's possession. In its motion, Tower mentioned Broussard's employment file as a piece of relevant documentary evidence. (Rec. Doc. 52-1 at 6.) The file is located at Tower's headquarters in Flowood, Mississippi. (Rec. Doc. 52-3.) According to Google Maps, the Flowood headquarters is 189 miles from the Eastern District, while it is 278 miles from the Western District. (Rec. Docs. 67-3, 67-4.) Tower failed to show the existence of any documentary evidence located in Lake Charles. Thus, it cannot show that venue in the Western District would facilitate the access to proof. This factor supports maintaining suit in the Eastern District.

*(2) Compulsory Process*

The second factor favors a transfer when the transferee venue would have "absolute subpoena power," or subpoena power for both depositions and trial. *MGT Gaming*, 978 F. Supp. 2d at 671. However, subpoena power is not an important consideration when the only witnesses are party witnesses. *Tegrity Contractors, Inc. v. Spectra Grp., Inc.*, No. 12-2555, 2013 WL 654924, at *5 (E.D. La. Feb. 21, 2013). Under the Federal Rules of Civil Procedure, a subpoena may command a person to attend a trial or deposition within 100 miles of where the person resides, is

11

employed, or regularly transacts business in person. Fed. R. Civ. P. 45(c)(1)(A). A party or a party's officer can be compelled to attend a trial or deposition anywhere in the state where he resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(c)(1)(B)(i). Thus, a corporate party's employees can be compelled to testify at a trial or deposition anywhere in the state. *Tegrity Contractors*, 2013 WL 654924, at *5.

Here, Tower has not identified any nonparty witnesses. Its motion mentions as potential witnesses Broussard's supervisor, Leah Sparks, and Broussard's co-workers, all of whom are Tower employees who work at the Lake Charles office. This Court has absolute subpoena power over these employees because they are party officers who are employed within the state of Louisiana. The motion generally states that most witnesses are located in Lake Charles, but it does not identify any witnesses who are not employees of a party. Thus, the availability of compulsory process is not an important factor in the transfer of venue analysis.

*(3)    Cost of Attendance*

The cost of attendance for willing witnesses is an important factor in determining whether to transfer venue. *Modern Am. Recycling Servs., Inc. v. Dunavant*, No. 10-3153; 2011 WL 1303136, *6 (E.D. La. March 31, 2011). While the cost of

12

attendance for party witnesses can be considered, the cost of attendance for nonparty witnesses is entitled to greater weight. *MGT Gaming*, 978 F. Supp. 2d at 671; *Remmers v. United States,* No. 09-345, 2009 WL 3617597, at *5 (E.D. Tex. Oct. 28, 2009); *Minka Lighting, Inc. v. Trans Globe Imports, Inc.*, No. 02-2538, 2003 WL 21251684, *2 (N.D. Tex. May 23, 2003). When the distance between the existing venue and proposed transferee venue is more than 100 miles, the inconvenience to the witnesses increases in direct proportion to the additional distance to be traveled. *Volkswagen II*, 545 F.3d at 317.

The moving party must "specifically identify the key witnesses and outline the substance of their testimony." *Tegrity Contractors*, 2013 WL 654924, at *4; *Modern Am. Recycling*, 2011 WL 1303136, *6; *Cypress Drilling, Inc. v. Griffin*, No. 06-0556, 2006 WL 2177992, at *2 (W.D. La. July 31, 2006); *Caraljo Music, Inc. v. Malaco, Inc.*, No. 87-3599, 1988 WL 32943, at *2 (E.D. La. Apr. 5, 1988); *Southern Inv'rs II v. Commuter Aircraft Corp.,* 520 F. Supp. 212, 218 (M.D. La. 1981); *see also* 15 Wright, Miller & Cooper § 3851, at 425. When the movant fails to make this showing, the court should deny the motion to transfer. *Caraljo Music, Inc.*, 1988 WL 32943, at *2 ("Witnesses have not been identified; their location is unknown; and the areas of testimony are not provided. Thus, [the movant] has failed to carry its burden."); 15 Wright, Miller & Cooper § 3851, at 425.

As discussed above, Tower failed to identify any nonparty witnesses who would be inconvenienced by trial in the Eastern District. In addition, Tower failed to list the key witnesses and the substance of their testimony. Instead, it stated generally that "[t]he costs for willing witnesses from Lake Charles to attend proceedings in Lake Charles would be minimal, but costs for their travel 205 miles to New Orleans would be significant." (Rec. Doc. 52-1 at 6.) This allegation is not sufficient to meet the movant's burden. Thus, this factor supports maintaining venue in the Eastern District.

*(4) Practical Problems*

In this case, the fourth factor is not important. The case is still "still in its infancy stage." *See Tegrity Contractors*, 2013 WL 654924, at *6. The parties have not begun conducting discovery, and the pre-trial conference and trial dates have not been set. Thus, neither party would be prejudiced by a transfer to the Western District. Broussard alleges generally that transfer would delay adjudication of his claim but does not offer any proof. Tower Loan has the burden of showing that transfer would result in a more efficient trial, but it failed to allege that transfer would affect the litigation at all. Thus, this factor is neutral.

### C. Public Interest Factors

The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Volkswagen II*, 545 F.3d at 315 (brackets in original). In this case, the parties have not raised issues of conflict of laws or familiarity of the courts with the relevant law. Thus, the only relevant factors are congestion and local interest.

*(1)   Congestion*

As part of the transfer analysis, courts will consider the time between the filing of a suit and trial. *In re Genentech*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). However, this factor is not entitled to much weight because it is the most speculative, and this factor alone should not outweigh other factors. *Id.*; *Versata Software, Inc. v. Internet Brands, Inc.*, No. 08-313, 2009 WL 3161370 at *4 (E.D. Tex. Sept. 30, 2009).

Tower did not allege that the Western District would provide a faster route to trial. However, Broussard cited statistics from the federal district courts showing that the Western District may be more congested than the Eastern District. (Rec. Doc. 67, at 14.) For example, cases in the Western District take a median

15

of twenty-seven months to reach trial, while cases in the Eastern District take a median of fifteen months. *Id.* Tower Loan did not carry its burden of showing that venue in the Western District would result in a faster adjudication. Thus, this factor weighs in favor of maintaining venue in the Eastern District.

*(2) Local Interest*

Tower alleges that venue is more appropriate in the Western District because Lake Charles has a local interest in deciding the case. (Rec. Doc. 52-1 at 6.) However, it does not explain how this case is of interest only to Lake Charles. *See id.* Instead, it suggests that Lake Charles has a local interest simply because the events alleged in the complaint occurred there. *See id.*

Tower's argument ignores the fact that multiple districts can have a local interest in a case. *See Wallace*, 2015 WL 1970514, at *7. Particularized local interests are entitled to more weight than local interests that "could apply virtually to any judicial district or division in the United States." *See Volkswagen II,* 545 F.3d at 318. The EEOC determined that this case raises issues of "general public importance." (Rec. Doc. 59-2.) This designation suggests that the issues raised in this case are important to the public at large, not only the residents of Lake Charles. Thus, Tower failed to show that this

16

case involves an interest localized to Lake Charles. For that reason, this factor supports maintaining venue in the Eastern District.

Tower failed to show that the private and public interest factors weigh in favor of a transfer to the Western District. Thus, the case will remain in the Eastern District.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Motion to Dismiss or, Alternatively, to Transfer Venue* **(Rec. Doc. 52)** is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's *Motion for Leave to File Reply Memorandum* **(Rec. Doc. 75)** is **DENIED** as moot.

New Orleans, Louisiana this 1st day of October, 2015.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE