# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TRISTAN BROUSSARD,**

                **Plaintiff,**

**v.**

**FIRST TOWER LOAN, LLC,**

                **Defendant.**

**CIVIL ACTION NO:**
 **2:15-cv-01161**

**SECTION: J**
**JUDGE BARBIER**

**MAG. SHUSHAN**

**JURY DEMAND**

**Consolidated With**

**FIRST TOWER LOAN, LLC, et al.**
Plaintiff,
**v.**
**TRISTAN BROUSSARD,**
Defendant.

**Civil Action No. 2:15-cv-02500-CJB-SS**
**Section "J" (1)**

## EEOC'S MEMORANDUM IN
## SUPPORT OF MOTION TO ALTER, AMEND,
## OR RECONSIDER ORDER STAYING EEOC'S CLAIMS

## I.       INTRODUCTION.

Plaintiff, the United States Equal Employment Opportunity Commission ("EEOC" or "Commission"), submits this memorandum in support of its motion to reconsider, alter, or amend the Court's December 10, 2015, order staying the EEOC's claims pending private arbitration. ECF No. 113 (the "order").  The order stays the EEOC's claims indefinitely, with no defined end point.  The stay by its terms may last for years or be permanent, thereby substantially delaying the EEOC's enforcement of Title VII.

The EEOC respectfully suggests that the order represents manifest error of law.  Under the FAA,[1] only claims which are "referable to arbitration" can be stayed.  It is beyond cavil, and Defendant appears to agree, that EEOC claims are never referable to arbitration.  Accordingly, the FAA provides no authority for a stay of the EEOC's claims.

Moreover, there is no basis for a discretionary stay here.  The order does not discuss the applicable standards for a movant to obtain a discretionary stay.  Tower's burden was to show a pressing need for a stay, a clear case of hardship or inequity in the absence of a stay, and a lack of harm to the EEOC or the public interest.  Tower has not argued those elements, much less established them.  The order's discussion of factors purportedly supporting a discretionary stay factors is inapposite and constitutes manifest error, as they derive from *Waste Management*.[2] That case makes clear that only claims that are referable to arbitration may be stayed under the FAA.  All courts to examine the question have held that the EEOC's claims cannot be stayed pending arbitration and no court of which we are aware has ruled otherwise.

---

[1]       Federal Arbitration Act, 9 U.S.C. § 1, *et seq*.   The order refers to "mandatory" and "discretionary" stays.  The EEOC understands that discussion of a "mandatory" stay in the order refers to a stay under the FAA.  Accordingly, for purposes of the instant motion and the Memorandum in Support, a "mandatory" stay and a stay under the FAA shall be synonymous.

[2]       *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 342 (5th Cir. 2004).

For the reasons discussed more fully below, the motion should be granted. In the alternative, the EEOC requests that the Court certify the order for immediate appeal pursuant to 28 U.S.C. § 1292(b).

## II.    STANDARDS FOR RECONSIDERATION.

A motion to reconsider filed within 28 days of an order is treated as a motion to alter or amend under Rule 59(e) of the Federal Rules of Civil Procedure. Such motions may be granted based on a "manifest error in law."[3] This Court has granted motions to reconsider under Rule 59(e) in instances of manifest error of law.[4] "Great discretion is given to the district court to grant or deny a motion under Rule 59(e)."[5]

"Under Rule 54 of the Federal Rules of Civil Procedure, the Court may revise its order 'at any time before the entry of a judgment' because it did not dispose of all issues against all parties." *M-I L.L.C. v. Stelly*, 09-1552, 2012 WL 1556095 (S.D. Tex. May 1, 2012). Thus, Rule 54 empowers this Court to reverse the stay. Moreover, Rule 60(b)(6) permits a court to "relieve a party or its legal representative from a final judgment, order, or proceeding" for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Thus, federal courts have broad power to correct their own orders, when the circumstances show it would serve the interests of justice. Especially where it would save the court and the parties time and money, for example, by averting the need for an appeal, reconsideration is proper. Fed. R. Civ. P. 1.

---

[3]    *Stokes v. Freeport-McMoran, Inc.*, No. 14-1538, 2015 WL 8276240, at *2 (E.D. La. Dec. 7, 2015) (Barbier, J.).

[4]    *See, e.g.*, *Louisiana Crisis Assistance Ctr. v. Marzano-Lesnevich*, 878 F. Supp. 2d 662, 672 (E.D. La. 2012) (Barbier, J.) (granting reconsideration in part).

[5]    *Stogner v. Cent. Boat Rentals, Inc.*, 326 F. Supp. 2d 754, 756 (E.D. La. 2004) (Barbier, J.) abrogated on other grounds by *Scarborough v. Clemco Indus.*, 391 F.3d 660 (5th Cir. 2004).

### III.    ARGUMENT AND LAW.

**A.    The FAA only allows stays of claims that are referable to arbitration, which the EEOC's claims are not.**

The mandatory stay provision under the FAA, on which the order is prominently founded, is unquestionably inapplicable to the EEOC — by its own terms and under relevant case law.  Section 3 of the FAA states:

> If any suit or proceeding be brought in any of the courts of the United States upon any **issue referable to arbitration** under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that **the issue involved in such suit or proceeding is referable to arbitration** under such an agreement, **shall on application of one of the parties stay the trial of the action until such arbitration has been had** in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).  Section 3 itself makes clear that claims may only be stayed under the FAA if they are referable to arbitration.  No one argues that the EEOC's claims here are referable to arbitration.  Therefore, the EEOC's claims cannot be stayed under the FAA, as the order has done.

The Supreme Court has plainly established that claims may be stayed only if they are referable to arbitration, stating "Section 3 of the Federal Arbitration Act (FAA) entitles litigants in federal court to a **stay** of any action that is '**referable to arbitration** under an agreement in writing.'"  *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 625 (2009).  (emphasis added).[6]

Justice Scalia went on to reiterate in *Carlisle* that Section 3 "says that stays are required **if** the

---

[6]    In *Carlisle*, the Supreme Court addressed, after *Waste Management*, the proper factors to determine whether a non-signatory can be bound to an arbitration agreement, that is, whether its claims are referable to arbitration.  In essence, the issue is whether general contract principles permit a non-party to a contract to be bound by or receive the benefit of the contract.  By recognizing that the EEOC's claims are obviously not referable to arbitration, the *Carlisle* Court definitively establishes that EEOC claims can never be stayed under the FAA.  The EEOC suggests that after *Carlisle*, *Waste Management* does not apply the proper standards for whether a non-party's claims can be referred to arbitration and, as such, has been implicitly overruled.  However, for present purposes, the EEOC assumes that *Waste Management* remains good law, albeit unsupportive of the order.

claims are '**referable to arbitration** under an agreement in writing.'"  *Id.* at 631 (emphasis

added).  Critically, Justice Scalia made pellucid that EEOC claims can never be stayed under the

FAA in light of *Waffle House* because the EEOC "obviously had no third-party obligations under

the contract in question."  *Id.* at 632, citing *Waffle House*.[7]  The Eighth Circuit has likewise

recognized that under *Waffle House*, EEOC suits cannot be stayed under the FAA.  *EEOC v.*

*Circuit City Stores, Inc.*, 285 F.3d 404, 406 (6th Cir. 2002) (ruling that employer's motion to stay

EEOC claims, which was denied by district court, was rendered moot by *Waffle House*).[8]

Likewise, the *Waste Management* case, on which the order is expressly founded, makes

clear that only claims that are referable to arbitration may be stayed under the FAA: "Thus, **if**

WM's claims against RIMSA are **'referable to arbitration,'** RIMSA has **standing to move for**

**a stay** and we have jurisdiction to review its denial."  *Waste Mgmt., Inc. v. Residuos Industriales*

*Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir. 2004) (emphasis added).

---

[7]     *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002).  The order states that the EEOC's reliance on *Waffle House* is "misplaced."  ECF No. 113 at 37.  The order appears to misapprehend the asserted importance of *Waffle House*.  The bases on which the order attempts to distinguish *Waffle House* are erroneous.  For example, the order states that, "However, in *Waffle House*, the EEOC filed an enforcement action and the employee was not a party to the case. *Id.* at 283. Moreover, the employee had not sought arbitration of his claim. *Id.* at 297."  ECF No. 113 at 36-37.  These circumstances are materially true here as well.  The EEOC in the matter at bar has filed an enforcement action, as in *Waffle House*.  Per *Harris*, the intervention is a claim entitled to even greater sympathy than a first-filed suit.  Likewise, Mr. Broussard at this point is, in essence, not a party to the suit.  The Court has referred his claims to arbitration and he will not be able to participate as party in a *de novo* trial concerning whether Defendant discriminated against him.  Finally, as in *Waffle House*, Mr. Broussard has not sought arbitration of his claim.  The circumstances of *Waffle House* and this case are materially identical.  There is an arbitration agreement that does not bind the EEOC, but there may never be an arbitration award between the private parties.  The indefinite stay which the order effectuates here is the functional equivalent at this point of a dismissal of the EEOC's claims, as the Commission is unable to prosecute them.  As such, the order's conclusion that the EEOC's reliance on *Waffle House* is misplaced represents clear error.

[8]     The court there stated, "In view of the recent Supreme Court opinion in *Equal Employment Opportunity Commission v. Waffle House, Inc.*, 534 U.S. 279, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002), Circuit City conceded at oral argument that the appeal in the suit brought by the EEOC is moot."

Neither the order nor Defendant disputes that the EEOC's claims are not referable to arbitration. The Supreme Court has observed in *Carlisle* that EEOC claims are "obviously" not referable to arbitration. Accordingly, it is manifest error to stay the EEOC's claims under the FAA, as the order has done.

> **B.      The order applied the wrong standards for a discretionary stay and Defendant failed to establish the requirements.**

The order does not discuss or apply the applicable standard for a discretionary stay, which is discussed below. Defendant did not establish the required elements. Accordingly, grant of a discretionary stay here is manifest error of law.

"[T]he burden is on the party seeking the stay to show that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order." *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977) (granting mandamus because stay was abuse of discretion). As the Supreme Court has stated:

> [T]he suppliant for a stay must make out a **clear case of hardship or inequity in being required to go forward**, if there is even a fair possibility that the stay for which he prays will work damage to someone else. **Only in rare circumstances will a litigant in one cause be compelled to stand aside** while a litigant in another settles the rule of law that will define the rights of both. Considerations such as these, however, are counsels of moderation rather than limitations upon power.

*Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) (emphasis added). A "stay of indefinite duration in the absence of a pressing need" — such as the stay here — represents an abuse of discretion. *Id*. This makes clear that the EEOC should not have to "stand aside" pending a private arbitration that may never occur. Defendant failed to meet its burden and the order should be reconsidered.

The order incorrectly attempts to balance Title VII against the FAA, which the Supreme Court prohibits in *Waffle House*. There, the circumstance was materially identical to the one here: no arbitration has occurred and none may ever occur. As the Supreme Court stated:

> The text of the relevant statutes . . . **do not authorize the courts to balance the competing policies of the ADA and the FAA** or to second-guess the agency's judgment concerning which of the remedies authorized by law that it shall seek in any given case.

*Id*. at 279 (emphasis added). Thus, the FAA and Title VII do not authorize the courts to balance the EEOC's need to enforce Title VII against the arbitration process — which the order has done by applying the irrelevant *Waste Management* factors.

> 1. **The factors relied on in the order do not pertain to discretionary stays but, rather, to stays authorized by the FAA. They are inapplicable.**

In discussing a discretionary stay, the order relies entirely on factors set forth in *Waste Management*.[9] However, that case analyzed those factors only **to determine whether the claims sought to be stayed were referable to arbitration**. As noted, the Supreme Court has made clear in *Waffle House* that the EEOC's claims are not referable to arbitration. The Supreme Court has likewise noted that the EEOC obviously cannot be bound to arbitration. In *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009), the Court discussed *Waffle House* as indicating that the EEOC's claims are not arbitrable, noting that the EEOC is an entity "which obviously had no third-party obligations under the contract in question." Thus, *Carlisle* forecloses a stay of EEOC claims under the FAA. Likewise, the *Waste Management* factors pertain only to whether a mandatory stay under the FAA can be granted **because the claim is referable to arbitration**. Therefore, those factors do not support, and are irrelevant to, a

---

[9]     "Considering the three *Waste Management* factors, the Court finds that a discretionary, if not a mandatory, stay is warranted." ECF No. 113, order at 34.

discretionary stay.  Applying the *Waste Management* factors to a discretionary stay is manifest error of law.

> ### 2. Defendant did not show a "pressing need" for a stay and a "clear case of hardship or inequity" in the absence of a stay, as it was required to do as the movant.

Defendant has not even argued, much less shown, that it has a "pressing need," for a stay, *Ohio*, and a "clear case of hardship or inequity" in the absence of a stay, *Landis*.  Likewise, the order finds no such compelling need.  On this basis, the stay should be lifted.

> #### a. Defendant has no inherent right to go first to arbitration. Concurrent proceedings are the norm and a lack of stay does not cause hardship or inequity.  No pressing need has been shown.  In the same vein, arbitration may never even occur.

Defendant makes no clear showing of hardship or inequity.  For example, Defendant suggests it should be permitted to go to arbitration first, to have the benefit of *res judicata* effect on the government's law enforcement action.[10]  The Supreme Court stated in *Waffle House* that "the FAA does not confer a right to compel arbitration of any dispute at any time . . . ." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 n.9 (2002).  The Supreme Court has noted that "it is far from certain that arbitration proceedings will have any preclusive effect on the litigation of nonarbitrable federal claims."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 222 (1985).  In his concurring opinion in *Dean Witter*, Justice White stated, "While the impossibility of the lawyers being in two places at once may require some accommodation in scheduling, it seems to me that **the heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course**."  *Dean Witter*, 470 U.S. at 225 (emphasis added).  The Fifth Circuit has read *Dean Witter*, including Justice White's concurrence, to cut against staying

---

[10]     If *res judicata* were ever to attach to an arbitral award, it would have to be fully appealed to have such an effect.  The stay in the matter at bar effectuates an indefinite delay that could last for years.

federal litigation because of pending or possible arbitration: "Thus, the Court has recognized that despite the fact that arbitration might be an 'inefficient maintenance of separate proceedings in different forums,' **litigation over nonarbitrable claims can continue even if arbitration proceedings are ongoing**." *Girard v. Drexel Burnham Lambert, Inc.*, 805 F.2d 607, 611 (5th Cir. 1986) (emphasis added). The Fifth Circuit went on to hold: "Nothing in *Greenblatt*, however, suggests that the litigation of nonarbitrable issues must be stayed pending the arbitration of pendent state claims; indeed, **such a position would run counter to the Supreme Court's statement in *Byrd*. Consequently, we hold that the district court properly refused to stay litigation pending arbitration of the pendent state claims**. *Id.* (emphasis added).[11]

Notably, the state court suit and the EEOC litigation proceeded at the same time in *Jefferson Dental*. The private parties' state court suit did not warrant a stay of the EEOC's litigation. This aspect of *Jefferson Dental* likewise undermines the order. In the same vein, the Eighth Circuit Court of Appeals has noted that the Supreme Court contemplated that arbitration and EEOC litigation would be proceeding concurrently. *EEOC v. Woodmen of World Life Ins. Soc.*, 479 F.3d 561, 569-70 (8th Cir. 2007).

The Supreme Court has even ruled that a court may stay an arbitration pending the outcome of litigation, affecting parties to the arbitration, **even where inconsistent results are possible**. *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474-75 (1989). In *Volt*, the Supreme Court noted that the FAA "confers only the right to obtain

---

[11] The order states at page 36, quoting the inapplicable *Waste Management* standards regarding a discretionary stay: "Thus, '[a]llowing the instant litigation to proceed would risk inconsistent results, and "substantially impact" the arbitration.'" *Id*." **The Supreme Court and Fifth Circuit decisions cited above demonstrate that this statement in the order is manifest error of law.** The *Waste Management* factors discussed there are only pertinent, as noted above, to decide whether claims are referable to arbitration and, thus, subject to a stay under the FAA — which is entirely distinct from a discretionary stay. The Supreme Court conclusively stated in *Carlisle* that EEOC claims are not referable and cannot be stayed under the FAA.

an order directing that "arbitration proceed *in the manner provided for in [the parties']* *agreement*." *Id.* (emphasis in the original, quoting 9 U.S.C. § 4).

In the case at bar, the arbitration agreement says nothing about when arbitration would happen, it does not affirmatively obligate Mr. Broussard ever to arbitrate, and it is silent on whether arbitration would come before or after litigation of third parties not bound by the agreement. In short, nothing gives Defendant the right to proceed to arbitration against Mr. Broussard **at all**, much less at any particular time or in any particular sequence. The arbitration agreement provides Defendant **nothing more than a defense** to Mr. Broussard's proceeding in federal court. Mr. Broussard is free to decline ever to participate in arbitration, or to refrain from doing so until after the EEOC's litigation against Defendant is concluded.

In sum, avoiding the theoretical possibility of concurrent proceedings is not a pressing need. There is, further, substantial likelihood that Mr. Broussard will not arbitrate his claims, in which case there would be no concurrent proceedings. If there were concurrent proceedings, they could be easily coordinated, such that no substantial harm would result to any party based on duplicative events. Defendant has not shown and the order did not find any substantial need to avoid, or hardship which would flow from, potentially concurrent proceedings.

      **b.**    **The arbitration award will not have *res judicata* effect. Therefore, Defendant's hope to get a *res judicata* award shows no benefit and, therefore, no pressing need.**

Importantly, the Supreme Court has refused to give *res judicata* effect to arbitration awards in federal discrimination cases:

> [I]n a § 1983 action, an arbitration proceeding cannot provide an adequate substitute for a judicial trial. Consequently, according preclusive effect to arbitration awards in § 1983 actions would severely undermine the protection of federal rights that the statute is designed to provide. We therefore hold that in a § 1983 action, a federal court should not afford *res judicata* or collateral-estoppel to effect an award in an arbitration proceeding brought pursuant to the terms of a collective-bargaining agreement.

*McDonald v. City of W. Branch, Mich.*, 466 U.S. 284, 292 (1984).  Thus, under *McDonald*, an arbitration award here would not have *res judicata* effect.

The order and Defendant rely heavily on *EEOC v. Jefferson Dental Clinics, PA*, 478 F.3d 690 (5th Cir. 2007), for the proposition that an arbitration award might have *res judicata* effect here on the EEOC's ability to seek make-whole relief.  However, *Jefferson Dental* does not support that proposition, nor does it support a stay.[12]  Because *Jefferson Dental* involved the question of whether a state court judgment — not an arbitration award — has *res judicata* effect, it is therefore inapposite.[13]

The order states that it has not been decided whether *res judicata* would attach to an arbitrator's decision, if one were to occur.  ECF No. 113 at 38.  Significantly, the EEOC is unaware of any case where a court has ever held that an arbitration award has *res judicata* effect on EEOC litigation.

Indeed, it has been recognized that neither the Supreme Court nor any Court of Appeals has ever applied *res judicata* effect to an unappealed arbitration award.[14]  Even if an arbitration

---

[12]    The EEOC respectfully suggests that insofar as *Jefferson Dental* were read to allow preclusive effect against the EEOC, it is irreconcilable with the Supreme Court's decision in *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008).  In *Taylor*, the Court articulated the bases on which a non-party may be bound in privity.  The EEOC would not be privy with Mr. Broussard under any of those bases.  Because the *Jefferson Dental* court found the EEOC to be in partial privity — just with regard to make-whole relief — *Jefferson Dental* is overruled by *Taylor*.  *Jefferson Dental* is also invalid because it conflicts with the Fifth Circuit's earlier decision in *East Baton Rouge Parish*, where the Fifth Circuit stated that private litigants' losses cannot bind the government under *res judicata*.

[13]    The *Jefferson Dental* court stated that "Under Texas law, a party seeking to have an action dismissed on the basis of res judicata must establish the presence of three things: "(1) **a prior final judgment on the merits by a court of competent jurisdiction**; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action."  478 F.3d at 694 (emphasis added).  **The first element for *res judicata* effect in *Jefferson Dental* unarguably fails here — an arbitration award is not a final judgment by a court of competent jurisdiction.**

[14]    *W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, 765 F.3d 625, 630-31 (6th Cir. 2014) *cert. denied*, 135 S. Ct. 1565, 191 L. Ed. 2d 640 (2015) ("Neither the Supreme Court nor our circuit has held that an unreviewed arbitration award bars the later litigation of a claim not subject to the

(continued . . .)

award were rendered between Mr. Broussard and Tower, which is far from certain, it may never be appealed. If such an award were appealed, that could entail years of delay. In short, the highly dubious prospect of a *res judicata* arbitration award is, at best for Defendant, speculative and falls far short of an established pressing need.

Absent *res judicata* effect on the issue of whether Defendant violated the law, waiting for an arbitration award would serve no beneficial purpose — and therefore cannot possibly represent pressing need. It would offend the purposes of Rule 1 of the Federal Rules of Civil Procedure to delay this litigation to await an arbitration award which has no binding effect.

Tower incorrectly suggests that the EEOC might be limited by an arbitration award from seeking monetary relief in this matter before a jury. However, the Supreme Court has made clear that the EEOC is entitled to seek punitive damages — which entitles the EEOC to a jury — irrespective of arbitration proceedings, because they do not constitute make-whole relief:

> [P]unitive damages benefit the individual employee, [but] they also serve an obvious public function in deterring future violations. *See Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266–270, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) ("Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor ..., and to deter him and others from similar extreme conduct"); Restatement (Second) of Torts § 908 (1977). Punitive damages may often have a greater impact on the behavior of other employers than the threat of an injunction . . . .

*Waffle House*, 534 U.S. at 295. Thus, even after an arbitral award, the EEOC would be able to pursue injunctive relief and punitive damages, before a jury.

---

(. . . continued)
arbitration. Nor are we aware of another circuit so holding. Indeed, '[c]onsiderable doubt exists as to whether, under federal law, arbitration proceedings can ever have a preclusive effect on the litigation of claims not subject to arbitration.' *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 463 n. 8 (6th Cir.1999); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 222, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) ('[I]t is far from certain that arbitration proceedings will have any preclusive effect on the litigation of nonarbitrable federal claims.'). **The Supreme Court has held that federal courts should not accord res judicata effect to an unappealed arbitration award in a case brought under 42 U.S.C. § 1983**. *McDonald*, 466 U.S. at 287–88, 104 S.Ct. 1799.") (emphasis added).

Arbitral awards are not a judgment of a competent court and are not entitled to the full faith and credit accorded in *Jefferson Dental*.  As noted, in *McDonald v. City of W. Branch, Mich.*, 466 U.S. 284, 285 (1984), the Supreme Court answered in the negative the question of whether in a § 1983 action "a federal court may accord preclusive effect to an unappealed arbitration award in a case brought under that statute."  Under *McDonald*, unappealed arbitration awards are not entitled to full faith and credit.[15]  The same result should pertain as to Title VII.

Moreover, even the court in *Jefferson Dental* concluded that the EEOC was free to litigate whether the employer violated the law and to pursue the public interest, irrespective of the state court judgment.  The EEOC was only limited by the state court judgment against the private plaintiff from seeking make-whole relief on his behalf.[16]  The court specifically noted, for example, that the EEOC was free to seek injunctive relief because it serves the public interest and is not in compensation of the private plaintiff.  Reading *Waffle House* and *Jefferson Dental* together, as they must be read, the ineluctable conclusion is that the EEOC would be free in this matter to litigate, *de novo*, whether Defendant violated Title VII and whether it is liable for punitive damages.  In other words, an arbitration will not — under any scenario — eliminate the

---

[15]     The *McDonald* Court stated, "Respondents contend that the Federal Full Faith and Credit Statute, 28 U.S.C. § 1738, requires that we give preclusive effect to the arbitration award. Our cases establish that § 1738 obliges federal courts to give the same preclusive effect to a state-court judgment as would the courts of the State rendering the judgment. *See*, *e.g.*, *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982). As we explained in Kremer, however, '[a] rbitration decisions ... are not subject to the mandate of § 1738.' *Id.*, at 477, 102 S.Ct., at 1894. This conclusion follows from the plain language of § 1738 which provides in pertinent part that the "judicial proceedings [of any court of any State] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State ... from which they are taken." (Emphasis added.) **Arbitration is not a 'judicial proceeding' and, therefore, § 1738 does not apply to arbitration awards**."  466 U.S. at 287-88 (emphasis added, footnotes omitted).

[16]     "The three elements of *res judicata* are therefore satisfied with respect to the claims for make-whole relief, and these claims are barred by the doctrine of *res judicata*."  *Jefferson Dental*, 478 F.3d at 699.

need for a trial here and will not relieve the Court's docket in any way. It will only lead to costly, prejudicial, inefficient delay.

Critically, the Fifth Circuit Court of Appeals has held that private litigation does not bind or preclude the federal government in its enforcement activities. It has stated that a district court's applying *res judicata* effect to a private suit:

> . . . is **directly contrary to the general principle of law that the United States will not be barred from independent litigation by the failure of a private plaintiff**. *See, e. g., City of Richmond v. United States*, 422 U.S. 358, 95 S.Ct. 2296, 45 L.Ed.2d 245 (1975); *Sam Fox Pub. Co. v. United States*, 366 U.S. 683, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961); *Restatement (Second) of Judgments* s 85, Comment d (Tent. draft No. 2, April 15, 1975). *Cf. Durfee v. Duke*, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963) (private action would not bind a state). This principle is based primarily upon the recognition that the **United States has an interest in enforcing federal law that is independent of any claims of private citizens**. In the present context the Supreme Court has characterized this as **" the highest public interest in the due observance of all constitutional guarantees."** *United States v. Raines*, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960).

*United States v. E. Baton Rouge Par. Sch. Bd.*, 594 F.2d 56, 58 (5th Cir. 1979) (emphasis added). Put another way, under this clear Fifth Circuit precedent, private litigation (or arbitration) cannot bind the United States government in its law enforcement activities.

The Eleventh Circuit has opined powerfully on the impermissible notion that private litigation could in any way constrain the federal government's ability to enforce the law, citing the Fifth Circuit precedent in *East Baton Rouge Parish*:

> Quite simply, it is so unusual to find privity between a governmental agency and private plaintiffs because governmental agencies have statutory duties, responsibilities, and **interests that are far broader than the discrete interests of a private party**. In *United States v. East Baton Rouge Parish Sch. Bd.*, 594 F.2d 56 (5th Cir.1979), the former Fifth Circuit explained this principle in these terms:
>
>> [T]he district court's conclusion [that the private plaintiffs and the United States were identical] is **directly contrary to the general principle of law that the United States will not be barred from independent litigation by the failure of a private plaintiff**. This principle is based primarily upon the recognition that the **United**

- 13 -

> **States has an interest in enforcing federal law that is independent of any claims of private citizens**. In the present context the Supreme Court has characterized this as "the highest public interest in the due observance of all constitutional guarantees."

*Id*. at 58 (quoting *United States v. Raines*, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960)) (citations omitted). **It is precisely this public interest function that distinguishes governmental agencies from private litigants, and the EEOC is certainly no exception to the principle that these agencies have responsibilities with a scope far beyond the legal interests of individual plaintiffs**.

*EEOC v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1291 (11th Cir. 2004) (emphasis added). Notably, the Fifth Circuit panel in *Jefferson Dental* does not discuss the Fifth Circuit's earlier decision in *East Baton Rouge Parish*.  That decision was binding on the panel in *Jefferson Dental*.  Accordingly, to the extent *Jefferson Dental* can be read as "contrary to the general principle of law that the United States will not be barred from independent litigation by the failure of a private plaintiff," it would be invalid under *East Baton Rouge Parish*.  *H&D Tire & Auto.-Hardware, Inc. v. Pitney Bowes Inc.*, 227 F.3d 326, 330 (5th Cir. 2000) ("When panel opinions appear to conflict, we are bound to follow the earlier opinion.  *See Harvey v. Blake*, 913 F.2d 226, 228 n. 2 (5th Cir.1990).").  Moreover, the Fifth Circuit has held that "after the termination of a charging party's private suit the EEOC can bring suit predicated on, but not limited to, the same charge." *EEOC v. Huttig Sash & Door Co.*, 511 F.2d 453, 454 (5th Cir.1975). There, the previous suit had been voluntarily dismissed with prejudice.  *Id*.  This reaffirms that the EEOC's right to proceed in the prosecution of its claims should be unencumbered by an arbitration agreement, especially where arbitration may never occur.

"It is a 'well-established general principle that the government is not bound by private litigation when the government's action seeks to enforce a federal statute that implicates both public and private interests.'"  *Pemco*, 383 F.3d at 1291 (citations omitted).  Similarly, in

*Donovan v. Cunningham*, 716 F.2d 1455, 1462–63 (5th Cir. 1983), an ESOP trustee was alleged to have paid more than adequate consideration for the stock of the company's president. The Fifth Circuit ruled that the Secretary's interest was distinct from the private plaintiffs' interests and, therefore, the Secretary was not precluded from bringing an independent action for ERISA violations. *Id*. The *Donovan* court further observed, "Similarly, the Equal Employment Opportunity Commission may bring discrimination charges against an employer even after its employees have settled their private claims. *New Orleans Steamship Ass'n. v. EEOC*, 680 F.2d 23, 25 (5th Cir.1982); *EEOC v. Kimberly-Clark Corp.*, 511 F.2d 1352, 1361 (6th Cir.), *cert. denied*, 423 U.S. 994, 96 S.Ct. 420, 46 L.Ed.2d 368 (1975)." 716 F.2d at 1462.[17]

Furthermore, if there were no stay of the EEOC's claims, and a judgment of this Court were to issue before an arbitration award, it would serve the interests of justice, not undermine them. The federal court process, governed by the Federal Rules of Civil Procedure, the Federal Rules of Evidence, Title VII, the Constitution, and appellate procedures, would safeguard the interests of justice, protect the parties' rights, and maximize the chances of a just outcome. An arbitrator's later being bound by such an outcome would not unduly prejudice any party's rights or the interests of justice. In fact, an arbitrator would benefit from the guidance of the Court after an adjudication of the complex statutory rights involved in this case.

>    **3.    Defendant failed to establish that a stay would not harm the EEOC or the public and the order found no such lack of harm.**

The "EEOC was intended 'to bear the primary burden of litigation,'" *EEOC v. Waffle*

---

[17]    *Jefferson Dental* also fails to cite either *New Orleans Steamship* or *Donovan*, both of which hold that private litigation does not preclude the federal government. Those earlier decisions trump *Jefferson Dental*, as noted. *H&D Tire & Auto.-Hardware, Inc. v. Pitney Bowes Inc.*, 227 F.3d 326, 330 (5th Cir. 2000). Therefore, to the extent *Jefferson Dental* concluded that the government can be precluded by private litigation, it is invalid as conflicting with earlier, binding precedent from the Fifth Circuit.

*House, Inc.*, 534 U.S. 279, 286 (2002), not private parties or arbitrators.[18] As the **primary** prosecutor of Title VII violations, the Commission should not be relegated to a **secondary** role of enforcement of Title VII, as the order has done.  The EEOC contends that Defendant has engaged in employment discrimination, by virtue of policies to which Defendant continues to adhere.  The stay order allows the discrimination to continue unredressed and unabated, pending an arbitration that may never proceed.  This substantially and unduly prejudices the Commission's ability to enforce Title VII.

The order turns Title VII framework — where the EEOC is the primary enforcer of Title VII — on its head, giving employers substantial control over the Commission's enforcement activities.  Anytime the Commission were to challenge discrimination in a workplace covered by an arbitration agreement, the employer could seek to stay the enforcement action pending arbitration of employees' private claims.  Unquestionably, these results would impermissibly harm the Commission's ability to enforce the law and, so, the public interest in eliminating discrimination in the workplace. *Cf. EEOC v. Frank's Nursery & Crafts, Inc.,* 177 F.3d 448, 459 (6th Cir. 1999) ("[t]o empower a private individual to take away [EEOC's] congressional mandate, by entering into private arbitration agreements . . ., would grant that individual the ability to govern whether and when the EEOC may protect the public interest and further our national initiative against employment discrimination").

---

[18]    *See also EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 750 (9th Cir. 2003) ("Moreover, the EEOC, which "was intended 'to bear the primary burden of litigation,' " *Waffle House*, 534 U.S. at 286, 122 S.Ct. 754 (quoting *Gen. Tel. Co. of N.W., Inc. v. EEOC*, 446 U.S. 318, 326, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980)), retains this role. Despite the presence of an employee-employer arbitration agreement, the EEOC **can still pursue judicial remedies because it is not a party to such agreements**.") (emphasis added).  Where, as here, the EEOC is stayed, it cannot at that time "pursue judicial remedies."  Likewise, if a court sets up the possibility — by its own reckoning, even if EEOC disagrees — of *res judicata* effects on the EEOC, then the stay would result in a prejudicial diminution of the EEOC's ability to enforce the law.

The 1972 amendments to Title VII gave the EEOC suit authority but "do not mention arbitration proceedings." *Waffle House*, at 286. "There is no language in the statutes or [*Occidental* or *General Telephone*] suggesting that the existence of an arbitration agreement between private parties materially changes the EEOC's statutory function or the remedies that are otherwise available. *Id.* at 288. "[O]nce a charge is filed . . . the EEOC is in command of the process," not the charging party. *Id.* at 291. The Supreme Court admonished:

> The statute clearly makes the EEOC the master of its own case and confers on the agency the authority to evaluate the strength of the public interest at stake. Absent textual support for a contrary view, it is the public agency's province—not that of the court—to determine whether public resources should be committed to the recovery of victim-specific relief. And if the agency makes that determination, the statutory text unambiguously authorizes it to **proceed** in a judicial forum.

*Id.* at 291-92 (emphasis added). Thus, the Commission is authorized to **proceed** — not be stayed indefinitely — in the judicial forum, and private arbitration agreements have no bearing to the contrary.

The Supreme Court likewise made clear that the FAA should have no negative effect on the EEOC's power to enforce the law, such as the stay ordered *sub judice*:

> Here there is no ambiguity. No one asserts that the EEOC is a party to the contract, or that it agreed to arbitrate its claims. It goes without saying that a contract cannot bind a nonparty. Accordingly, the proarbitration policy goals of the FAA do not require the agency to relinquish its statutory authority if it has not agreed to do so.

*Id.* at 294. There is no statutory or jurisprudential basis to subjugate the EEOC's law enforcement activity to a private arbitration. The stay here — which is open-ended — stops the EEOC from enforcing the law by prosecuting this case.

The Supreme Court stated, "the EEOC has the authority to pursue victim-specific relief **regardless** of the forum that the employer and employee have chosen to resolve their disputes . . . ." *Waffle House* at 295 (emphasis added). Where, as here, the EEOC is stayed indefinitely

from prosecuting its claims, it has been denied the ability to "pursue victim-specific relief regardless" of the arbitration, in contravention of *Waffle House*'s explicit language.

Significantly, the EEOC **always** pursues the public interest when it files suit, even on behalf of a particular individual:

> **[W]henever** the EEOC chooses from among the **many charges filed each year** to bring an enforcement action in a particular case, the agency may be seeking to vindicate a public interest, not simply provide make-whole relief for the employee, **even when it pursues entirely victim-specific relief**."

*Id.* at 296 (emphasis added).[19]   The Supreme Court went on to observe, "To hold otherwise would **undermine the detailed enforcement scheme created by Congress simply to give greater effect to an agreement between private parties that does not even contemplate the EEOC's statutory function**."   Id. (emphasis added).   The order runs afoul of this holding in *Waffle House*.   The EEOC and the public interest are harmed by the stay.

The Supreme Court's admonition is much more compelling in cases like this one, where the EEOC certifies a suit as a matter of general public importance — a far more selective occurrence than the filing of direct action, which typically happens hundreds of times per year. The Commission has intervened in this case for the first time in more than ten years, bespeaking a heightened degree of importance, which should not be undermined by an indefinite stay which will serve no beneficial purpose and only result in needless delay and additional expense.  Again, the stay harms the EEOC and the public.

---

[19]       We note that at page 35, the order quotes this passage from *Waffle House*, but leaves off the phrase "even when it pursues entirely victim-specific relief," without ellipses to indicate the omission.  The omitted language dramatically alters the meaning of the Supreme Court's quote, which sternly cautions against undermining the EEOC's enforcement scheme by virtue of arbitration, as has happened here.  The Seventh Circuit has aptly observed, "[t]he EEOC's primary role is that of a law enforcement agency and it is **merely a detail** that it pays over any monetary relief obtained to the victims of the defendant's violation rather than pocketing the money itself and putting them to the bother of suing separately." *In re Bemis Co., Inc.*, 279 F.3d 419, 421 (7th Cir. 2002) (emphasis added).

The order incorrectly suggests that *res judicata* could be a **benefit** of the stay by possibly limiting the relief which the EEOC can obtain. ECF No. 113 at 36-38. To the contrary, such an effect promises only to **harm** the EEOC and the public interest. If an arbitration award would limit the EEOC's ability to seek make-whole relief, this in no way constitutes benefit to the EEOC or the public interest.

Likewise, if *res judicata* effect were to attach to an arbitration award, then the EEOC's ability to enforce Title VII and to influence its interpretation in the courts could be gravely undermined by the stay. A private arbitrator — who may have no particular expertise in the relevant law, whose decision would not be appealable, and who would not be constrained by the Federal Rules or the bounds of sound discretion — would be deciding important issues never yet addressed by any federal court of appeals. This Court and the Fifth Circuit Court of Appeals would then presumably be bound — according to Tower's likely arguments — by such a decision, unfettered by the Federal Rules or even a requirement to state reasons explaining the outcome. This scenario further shows that the stay would substantially harm the public interest and the EEOC's enforcement of Title VII. The Supreme Court admonished in *Landis* that parties should rarely be forced to stand aside while others litigate their rights. The *Landis* court also emphasized that an indefinite stay is an abuse of discretion.

The order also appears erroneously to conclude that EEOC interventions are less consequential than suits filed by the Commission in the first place. The Fifth Circuit Court of Appeals has recognized that cases where the **EEOC intervenes are of even greater importance than when it files a direct suit in the first instance**: "Indeed, it could be argued that the requisite certificate of public importance—certainly less demanding than a direct action's formal attempt to conciliate—suggests **greater sympathy for Commission intervention than for**

**direct suit**." *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 677 (5th Cir. 1985) (emphasis added).[20]

Accordingly, the decisions in cases like *Woodmen*, where the court of appeals held that EEOC's claims are not to be stayed pending arbitration, apply with equal or greater force here. *EEOC v. Woodmen of World Life Ins. Soc.*, 479 F.3d 561, 570 (8th Cir. 2007) ("Pursuant to § 3 of the FAA, the district court shall stay Rollins' cross-claims filed in the EEOC's action, but there is no basis for staying the EEOC's enforcement action itself."). The fact that the stay has indefinitely prevented the EEOC from prosecuting the first case it has certified in more than ten years as one of general public importance constitutes substantial harm to the Commission and the public interest.

In sum, there is substantial prospect of numerous kinds of substantial harm to the EEOC and the public interest stemming from a stay. Defendant failed to meet its burden to show, and the order did not find, otherwise.

**C.    All courts to examine the question have refused to stay the EEOC pending arbitration.**

In opposing the stay, ECF No. 100 at 18-19, the EEOC cited applicable case law showing that the Commission's actions should not be stayed pending a hypothetical arbitration, including *Woodmen*. The order does not acknowledge or discuss these directly-relevant cases, finding that the EEOC cannot be stayed pending arbitration. The order's disregard of these authorities supports the conclusion of a manifest error of law, warranting reconsideration under Rule 59(e).

---

[20]    The order states that the EEOC's reliance on *Harris* is "misplaced." ECF No. 113 at 39. However, the order appears to misunderstand the premise for which the EEOC relies on *Harris*. In that case, the Fifth Circuit found that EEOC interventions are entitled to "greater sympathy" than suits where the EEOC files as the initial plaintiff (sometimes referred to as a "direct action"). Tower has suggested and the order seems to infer that because the EEOC intervened here, rather than filing suit first, its interests are somehow less than they would be otherwise. *Harris* establishes that the opposite is true. Thus, the order's statement that the EEOC's reliance on *Harris* is misplaced represents clear error.

Likewise, it suggests an oversight by the Court which undermines the interests of justice, supporting reconsideration under Rule 60(a) and 60(b)(6).

The EEOC is not aware of aware of a single extant decision, before the order — and the order cites none — where the Commission's right to enforce Title VII has been stayed pending a hypothetical arbitration that may never occur. **Numerous courts — all those we have found to address the question — have rejected such stays**. *See* cases in the following footnote.[21]

The fact that courts have uniformly refused to stay EEOC litigation based on pending arbitration in direct actions amplifies the inappropriateness of a stay here. While the EEOC files hundreds of direct actions each year, it has only certified one case as a matter of general public importance in more than the past decade. Allowing a stay of EEOC's very few, carefully

---

[21]     *E.g.*, *EEOC v. Circuit City Stores, Inc.*, 285 F.3d 404, 406 (6th Cir. 2002) (ruling that employer's motion to stay EEOC claims, which was denied by district court, was rendered moot by *Waffle House*); *EEOC v. Woodmen of World Life Ins. Soc.*, 479 F.3d 561, 568 (8th Cir. 2007) ("In this appeal, the **EEOC** seeks only to ensure that its enforcement action **will not be stayed** in the event we reverse the district court's judgment relieving Rollins of her obligation to arbitrate her claims. Under *Waffle House*, we agree that the **arbitration agreement and any related proceedings have no bearing on the EEOC's ability to pursue its enforcement action, and we place no limitations on the EEOC's continuation of its enforcement action**.") (emphasis added); *EEOC v. Rappaport, Hertz, Cherson & Rosenthal, P.C.*, 273 F. Supp. 2d 260, 265 (E.D.N.Y. 2003) ("An arbitration agreement between an employer and its employee does not prevent the EEOC from vindicating the public interest. *Id*. at 296, 122 S.Ct. 754. Therefore, the Court will not stay the EEOC's action against the defendant, but will stay Ashraf's proceedings against the defendant pending the conclusion of the arbitration proceeding."); *EEOC v. SWMW Mgmt., Inc.*, No. CV-08-0946-PHX-GMSOP, 2009 WL 1097543, at *6 (D. Ariz. Apr. 22, 2009) (denying stay of EEOC claims pending arbitration, noting, "The Supreme Court [in *Waffle House*] concluded that Baker's arbitration agreement did not, **in any way**, hinder the EEOC's ability to prosecute the charge of discrimination, including the right to seek victim-specific relief in the form of reinstatement, backpay, and compensatory or punitive damages.") (emphasis added); *EEOC v. Nw. Airlines, Inc.*, 188 F.3d 695, 702 (6th Cir. 1999) ("Our holding in *Frank's Nursery* makes clear that the EEOC's right to sue based on Hamilton's charge is **not affected by Hamilton's arbitration agreement**, whether or not it would apply to her if she brought suit on her own."); *EEOC v. Joslin Dry Goods Co.*, No. CIV.A. 05-CV-00177WD, 2007 WL 433144, at *2 (D. Colo. Feb. 2, 2007) ("In contrast, **the stay would prejudice the strong public interest reflected by the statutes authorizing enforcement actions by the EEOC** and the interests of the other class members.") (emphasis added). *Cf. Cleary v. Albany Cty. Sheriff's Dep't*, No. 1:08-CV-00349LEKDRH, 2008 WL 5340994, at *3 (N.D.N.Y. Dec. 19, 2008) (recognizing that "The Eighth Circuit found that the arbitration agreement required the employee to arbitrate her claims with her employer because requiring her to arbitrate would not **interfere with or have any bearing on the EEOC's ability to pursue its separate enforcement action**.") (emphasis added).

selected cases of general public importance would severely prejudice the Commission's ability to enforce Title VII and use the power given to the General Counsel to intervene.

## IV.    IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY THE STAY ORDER FOR IMMEDIATE APPEAL UNDER 28 U.S.C. § 1292(b).

Section 1292(b) of Title 28 of the United States Code permits immediate appeal where the district court certifies the order in question.  In the Fifth Circuit, a district court judge has "discretion to certify an order" for interlocutory appeal where that order involves "[1] a controlling question of law [2] as to which there is substantial ground for difference of opinion" and where "[3] an immediate appeal from the order may materially advance the ultimate termination of the litigation."  *United States v. Caremark, Inc.*, 634 F.3d 808, 814 (5th Cir. 2011) (bracketed numbers added); 28 U.S.C. § 1292(b).  All of these elements are satisfied here.

An issue is "controlling" if it promises to substantially impact the scope of the litigation.  *Tesco Corp. v. Weatherford Int'l, Inc.*, 722 F. Supp. 2d 755, 765-68 (S.D. Tex. 2010) (an issue must have "potential to have some impact on the course of the litigation" to be deemed "controlling").[22]  Whether the EEOC's claims should be stayed by virtue of a private arbitration agreement is a question of law.  It does not hinge on a court of appeals' deciding complex facts.  Likewise, whether the EEOC's claims are stayed promises to have a substantial impact on the course of the litigation.  The first element under § 1292(b) is met.

---

[22]      In *Tesco Corp.*, the court found that his denial of a motion to stay presented a controlling question of law, despite the fact that reversal of the order would not terminate the action.  *Tesco Corp*, 722 F. Supp 2d at 766. The court there described a spectrum of possibilities for whether or not an order presents a controlling issue.  At one end of the spectrum, "a question of law is controlling if reversal of the order would terminate the action."  *Id.* (citation omitted).  At the other end, "an issue is not seen as controlling if its resolution on appeal would have little or no effect on subsequent proceedings."  *Id.*  While the order did not fall at that extreme end of the spectrum, the court found that it involved a controlling question of law because it could "impact the future course of the litigation" by causing delay or affecting the measure of damages.  *Id.*

No court of appeals has held, to our knowledge, that the EEOC's claims should be stayed pending private arbitration.  All courts to decide this have ruled in EEOC's favor.  Accordingly, there is substantial ground to conclude that the order here should be reversed.  This likewise supports 1292(b) certification.

Finally, immediate appeal is likely to materially advance the ultimate disposition of this litigation.  If the matter proceeds to arbitration, returns to this court months or years hence, and a final judgment ensues, the EEOC would be able to appeal that final judgment.  By that point, however, Mr. Broussard, the EEOC, and the public interest would have been prejudiced by substantial delays.  If the Commission were to prevail on such an appeal, then the arbitration would have been a waste of time and the matter would be remanded for trial proceedings.  An immediate appeal of the subject order is likely to result in a materially quicker and more efficient resolution to this matter.

## V.     CONCLUSION.

Section 3 of the FAA, *Carlisle*, and *Waste Management* make clear that claims may only be stayed under the FAA if they are referable to arbitration.  It is undisputed that the EEOC's claims are  not referable.  The Supreme Court expressly recognized in *Carlisle* that, per *Waffle House*, the EEOC's claims are "obviously" not referable to arbitration and, therefore, cannot be stayed.  Thus, a mandatory stay here under the FAA is manifest error.

Likewise, a discretionary stay is insupportable.   The order did not articulate the applicable standard for a discretionary stay under *Landis* and *Ohio*, *supra*.  Nor did the order analyze whether the proper standards were met.  Defendant failed to establish pressing need or a clear case of hardship or inequity justifying the stay.  Defendant also failed to show that neither the EEOC nor the public interest would be harmed by a stay of the Commission's claims.  The EEOC is unaware of any case in which the Commission's claims have been stayed pending

private arbitration.  The stay here will result only in needless delay, allowing discrimination to continue unabated, pending an arbitration that may never happen.  Under the reading of *Jefferson Dental* most favorable to Defendant, a trial in this Court *de novo* would still be required, irrespective of the outcome in an arbitration.  The order should be reversed and the stay of the EEOC's claims lifted.

If the Court does not reconsider the order, the EEOC respectfully suggests that the Court certify it for immediate appeal under 28 U.S.C. § 1292(b).  The order presents a controlling question of law, as to which a substantial ground for difference of opinion exists, immediate appeal of which is likely to materially advance the ultimate termination of this litigation.  Without an immediate appeal, this case could languish for years or even permanently, gravely harming the EEOC and the public interest.  It is far from certain that Mr. Broussard will ever arbitrate his claims with Defendant.  In any event, the parties and the Court would benefit from an interlocutory decision on whether the stay is proper.

**WHEREFORE**, for all the foregoing reasons, the EEOC respectfully requests that the motion be granted.

Respectfully submitted,

/s/ Gregory T. Juge
**GREGORY T. JUGE**
Supervisory Trial Attorney
La. Bar Roll No. 20890
**U.S. EQUAL EMPLOYMENT**
**OPPORTUNITY COMMISSION**
New Orleans Field Office
Hale Boggs Federal Building
500 Poydras Street, Suite 809
New Orleans, LA  70130
Direct line: (504) 676-8239
Fax: (504) 595-2886
gregory.juge@eeoc.gov


**EDWARD JUAREZ (T.A.)**
Supervisory Trial Attorney
Texas State Bar No. 24014498
**U.S. EQUAL EMPLOYMENT**
**OPPORTUNITY COMMISSION**
San Antonio Field Office
5410 Fredericksburg Road, Suite 200
San Antonio, Texas 78229
Direct Line: (210) 281-7613
Facsimile: (210) 281-7669
eduardo.juarez@eeoc.gov


**ALEXANDRA NAVARRE-DAVIS**
Trial Attorney
La. Bar Roll No. 35000
**U.S. EQUAL EMPLOYMENT**
**OPPORTUNITY COMMISSION**
New Orleans Field Office
Hale Boggs Federal Building
500 Poydras Street, Suite 809
New Orleans, LA  70130
Direct line: (504) 595-2914
Fax: (504) 595-2886
alexandra.navarre-davis@eeoc.gov

**COUNSEL FOR PLAINTIFF,**
**U.S. EQUAL EMPLOYMENT**
**OPPORTUNITY COMMISSION**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been served on counsel of record for all parties via the Court's ECF system on this 7th day of January, 2016.


/s/ Gregory T. Juge