UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TRISTAN BROUSSARD                    CIVIL ACTION

VERSUS                               NO: 15-1161
                                     c/w 15-2500

FIRST TOWER LOAN, LLC                SECTION: "J"(1)

## ORDER & REASONS

Before the Court is a *Motion to Alter, Amend, or Reconsider Order Staying EEOC's Claims* (**Rec. Doc. 114**) filed by Intervenor, the United States Equal Employment Opportunity Commission ("EEOC"); an opposition thereto (Rec. Doc. 117) filed by Defendant, First Tower Loan, LLC ("Tower Loan"); and a reply (Rec. Doc. 122) filed by the EEOC. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

This litigation derives from Tristan Broussard's employment with Tower Loan. Broussard is a twenty-one-year-old resident of Lake Charles, Louisiana. (Rec. Doc. 1 at 2.) Tower Loan is a consumer loan company, headquartered in Mississippi, with branches in five states, including Louisiana. *Id.* at 3. Broussard is a transgender man, meaning he outwardly appears to be male and his

gender identity is male. *Id.* at 4. His birth sex, however, is female. *Id.*

Broussard began working in Tower Loan's Lake Charles office in March 2013. *Id.* at 1. When Broussard arrived for his first day of work, the manager of the Lake Charles office presented him with the paperwork required to be completed by new employees. These materials included an arbitration provision. Tower Loan also required Broussard to provide a valid form of identification. *Id.* at 5. Broussard provided his driver's license. *Id.* As Broussard completed the paperwork, the manager noticed that his driver's license listed his sex as female. *Id.* When asked about the listed sex, Broussard explained that he is a transgender man. *Id.*

On March 11, 2013, Tower Loan's Vice President, David Morgan, visited the Lake Charles office. *Id.* at 6. Morgan gave Broussard a copy of the company's dress code for female employees and informed Broussard that the company would require him to dress as female. *Id.* Morgan also presented Broussard with a written statement and told him that he must sign the statement in order to continue working at Tower Loan. *Id.* at 7. The statement expressed that Broussard's "preference to act and dress as male" was not "in compliance with Tower Loan's personnel policies." *Id.* Further, the statement indicated that when an overnight room is required for out-of-town meetings, Broussard would be assigned to a room with

a female. *Id.* Broussard refused to sign the statement, and his employment terminated. *Id.*

Broussard filed a charge of discrimination with the EEOC on August 27, 2013. *Id.* at 8. On January 20, 2015, the EEOC determined that Broussard's claim was meritorious and issued a Notice of Right to Sue. *Id.* at 8-9. Broussard filed the instant action on April 13, 2015, asserting claims against Tower Loan for discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964 *Id.* at 9. Tower Loan then filed suit against Broussard in Mississippi state court, seeking to compel Broussard to arbitrate the claims asserted in his action against Tower Loan. (No. 15-2500, Rec. Doc. 1.) Broussard removed Tower Loan's suit to the United States District Court for the Southern District of Mississippi. *Id.* Upon Broussard's motion, the Southern District of Mississippi transferred Tower Loan's suit to this District on July 7, 2015, where it was consolidated with Broussard's case. (No. 15-2500, Rec. Doc. 18.) Thereafter, on September 8, 2015, the EEOC filed a motion to intervene, which the Court granted. (Rec. Doc. 70.)

In November 2015, Tower Loan filed a motion to compel Broussard to arbitrate his claims and a motion to stay the EEOC's claims pending Broussard's arbitration. On December 9, 2015, the Court granted Tower Loan's motions. (Rec. Doc. 113.) First, the Court determined that Broussard claims against Tower Loan fell

3

within the scope of valid arbitration provision in his employment contract, and therefore the Federal Arbitration Act mandated that his claims be stayed. Second, the Court determined that a discretionary stay of the EEOC's claims was appropriate under the circumstances. Tower Loan did not seek to compel the EEOC to arbitrate any of its claims, and the Court did not determine that the EEOC was bound to arbitrate any of its claims.

The EEOC now moves the Court to reconsider the portion of its December 9, 2015 Order and Reasons staying the EEOC's claims. The EEOC filed the instant *Motion to Alter, Amend, or Reconsider Order Staying EEOC's Claims* **(Rec. Doc. 114)** on January 7, 2016.[1] Tower Loan opposed the motion on January 19, 2016. On January 26, 2016, the Court granted the EEOC leave to file its reply. The motion is now before the Court on the briefs, without oral argument.

## **LEGAL STANDARD**

The Federal Rules of Civil Procedure do not expressly allow motions for reconsideration of an order. *Bass v. U.S. Dep't of Agric.*, 211 F.3d 959, 962 (5th Cir. 2000). The Fifth Circuit treats a motion for reconsideration challenging a prior judgment as either a motion "to alter or amend" under Rule 59(e) or a motion for "relief from judgment" under Rule 60(b) of the Federal Rules of

---

[1] In its motion, as an alternative relief, the EEOC requested certification of the December 9, 2015 Order and Reasons for immediate appeal pursuant to 28 U.S.C. § 1292(b). However, the EEOC has since withdrawn this request. (Rec. Doc. 118.)

Civil Procedure. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994). The difference in treatment is based on timing. If the motion is filed within twenty-eight days of the entry of judgment, then it falls under Rule 59(e). *Id.; accord* Fed. R. Civ. P. 59(e). However, if the motion is filed more than twenty-eight days after the entry of judgment, but not more than one year after the entry of judgment, it is governed by Rule 60(b). *Lavespere*, 910 F.2d at 173; *accord* Fed. R. Civ. P. 60(c).

In the present case, the EEOC filed its motion on January 7, 2016, which is twenty-eight days from the entry of the Court's Order and Reasons staying the EEOC's claims. Because no final judgment has been rendered in this case, the EEOC's motion is treated as a motion for reconsideration of an interlocutory order under Rule 54(b). Rule 54(b) provides that an order that adjudicates fewer than all the claims among all the parties "may be revised at any time" before the entry of a final judgment. Fed. R. Civ. P. 54(b). Under Rule 54(b), the district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981). The general practice of courts in this district has been to evaluate Rule 54(b) motions to reconsider interlocutory orders under the

same standards that govern Rule 59(e) motions to alter or amend a final judgment. *See, e.g.*, *Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09-4369, 2010 WL 1424398, at *4 (E.D. La. Apr. 5, 2010).

Altering or amending a judgment under Rule 59(e) is an "extraordinary remedy" used "sparingly" by the courts. *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). A motion to alter or amend calls into question the correctness of a judgment and is permitted only in narrow situations, "primarily to correct manifest errors of law or fact or to present newly discovered evidence." *Id.*; *see also Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). Manifest error is typically defined as "[e]vident to the senses, especially to the sight, obvious to the understanding, evident to the mind, not obscure or hidden, and is synonymous with open, clear, visible, unmistakable, indubitable, indisputable, evidence, and self-evidence." *In re Energy Partners, Ltd.*, No. 09-32957, 2009 WL 2970393, at *6 (Bankr. S.D. Tex. Sept. 15, 2009); *see also Pechon v. La. Dep't of Health & Hosp.*, No. 08-664, 2009 WL 2046766, at *4 (E.D. La. July 14, 2009) ("'[M]anifest error' is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'").

The Fifth Circuit has noted that such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before entry of

judgment." *Templet*, 367 F.3d at 478-79. Rule 59(e) motions "cannot be used to raise arguments that could, and should, have been made before the judgment issued." *Marseilles Homeowners Condo. Ass'n Inc. v. Fid. Nat. Ins. Co.*, 542 F.3d 1053, 1058 (5th Cir. 2008). Accordingly, this Court may properly decline to consider new arguments on reconsideration if those arguments were available to the movant prior to the order.

Nor should a Rule 59(e) motion be used to "re-litigate prior matters that . . . simply have been resolved to the movant's dissatisfaction." *Voisin v. Tetra Techs., Inc.*, No. 08-1302, 2010 WL 3943522, at *2 (E.D. La. Oct. 6, 2010). Thus, to prevail on a motion under Rule 59(e), the movant must clearly establish at least one of three factors: (1) an intervening change in the controlling law; (2) the availability of new evidence not previously available; or (3) a manifest error in law or fact. *Schiller*, 342 F.3d at 567; *see also Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) ("A motion to alter or amend judgment 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence.'").

## DISCUSSION

The EEOC asserts that the Court's December 9, 2015 Order and Reasons represents a manifest error of law. (Rec. Doc. 114-1, at 2.) First, the EEOC argues that granting a stay of its claims under the Federal Arbitration Act ("FAA") is a manifest error of law

because "EEOC claims are never referable to arbitration." *Id.* Second, the EEOC argues that the Court erred by failing to identify and apply the proper standards for a discretionary stay. *Id.*

Under section 3 of the FAA, a district court must stay a lawsuit or proceeding if it involves an "issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. This provision is mandatory and demands a stay of legal proceedings "whenever the issues in a case are within the reach of an arbitration agreement." *In re Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993). When these circumstances are present, a district court "has no discretion under section 3 to deny the stay." *Id.*

Historically, the mandatory stay provision of the FAA did not apply to those who were not bound by the arbitration agreement. *See, e.g.*, *Adams v. Ga. Gulf Corp.*, 237 F.3d 538, 540 (5th Cir. 2001); *In re Talbott Big Foot, Inc.*, 887 F.2d 611, 614 (5th Cir. 1989). However, in recent years, courts have expanded the applicability of the mandatory stay provision. The Fifth Circuit has "applied the stay provision to non-parties [if] the issues presented in the nonparty-party litigation if litigated would have rendered the arbitration redundant and thwarted the federal policy favoring arbitration." *Adams*, 237 F.3d at 540-41 (citing *Harvey v. Joyce*, 199 F.3d 790 (5th Cir. 2000); *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324 (5th Cir. 1999)). For example, in *Waste*

*Management, Inc. v. Residuous Industriales Multiquim, S.A. de C.V.*, the Fifth Circuit held that a nonsignatory to an arbitration agreement could invoke the mandatory stay provision. 372 F.3d 339, 342 (5th Cir. 2004). The court found that the signatory's claims in the litigation were so closely related to the arbitration and would have such an impact on the arbitration as to make a stay mandatory under section 3. *Id.* at 345.

In *Waste Management*, the Fifth Circuit articulated three factors that courts should consider in determining whether the mandatory stay provision of section 3 applies: "1) the arbitrated and litigated disputes must involve the same operative facts; 2) the claims asserted in the arbitration and litigation must be 'inherently inseparable'; and 3) the litigation must have a 'critical impact' on the arbitration." *Id.* at 343. "The question is not ultimately one of weighing potential harm to the interests of the non-signatory, but of determining whether proceeding with litigation will destroy the signatories' right to a meaningful arbitration." *Id.* (citing *Adams*, 237 F.3d at 541). It is important to note that section 3 of the FAA does not grant a court the authority to compel arbitration of a dispute, and the Fifth Circuit did not do so in *Waste Management*. "It merely gives courts the power to stay proceedings pending the completion of arbitration." *Hill v. G E Power Sys., Inc.*, 282 F.3d 343, 347 (5th Cir. 2002).

Although several circuits began applying the FAA in certain situations to litigants who were not parties to an arbitration agreement, other circuits continued to follow the traditional rule, finding the FAA wholly inapplicable to nonsignatories. In *Arthur Anderson LLP v. Carlisle*, however, the Supreme Court repudiated this position and expanded the application of the FAA to nonsignatories. 556 U.S. 624, 631-32 (2009). The Court in *Carlisle* held that state contract law governs whether an arbitration agreement may be enforced by or against a nonsignatory. *Id.* at 631. The Court explained that "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" *Id.* (quoting 21 R. Lord, Williston on Contracts § 57:19 (4th ed. 2001)). Therefore, the Court held that the lower court erred in holding that nonparties to a contract are categorically barred from relief under section 3 of the FAA. *Id.*

Following the Supreme Court's holding in *Carlisle*, the Fifth Circuit identified two of its earlier decisions that *Carlisle* had effectively overruled: *Zimmerman v. International Companies & Consulting, Inc.*, 107 F.3d 344 (5th Cir. 1997), and *In re Talbott*

10

*Big Foot, Inc.*, 887 F.2d 611 (5th Cir. 1989).[2] *Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*, 601 F.3d 329, 333 (5th Cir. 2010). In *Zimmerman* and *Big Foot*, injured seamen filed claims against their employers' insurers under Louisiana's direct action statute. *Zimmerman*, 107 F.3d at 345; *Big Foot*, 887 F.2d at 612. In response to the direct actions, the insurers sought to stay the seamen's suits until the insurers resolved coverage disputes with the seamen's employers in arbitration, pursuant to an arbitration clause in the insurance policies. *Zimmerman*, 107 F.3d at 345; *Big Foot*, 887 F.2d at 612. In both cases the Fifth Circuit found that a stay under the FAA was inappropriate, reasoning that the mandatory stay provision of the FAA did not apply because the seamen were not parties to the arbitration agreements.[3] The Fifth Circuit recognized that *Carlisle* rejected the reasoning the *Zimmerman* and *Big Foot*, and instead concluded that "nonsignatories to arbitration agreements (such as direct action plaintiffs) may sometimes be compelled to arbitrate." *Todd*, 601 F.3d at 333.

---

[2] The Fifth Circuit has also recognized that its prior decisions allowing nonsignatories to compel arbitration based on federal common law, rather than state contract law, such as *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524 (5th Cir. 2000), have been overruled and must be modified to conform with *Carlisle*. *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 261-62 (5th Cir. 2014). In *Grigson*, the Fifth Circuit adopted the "intertwined-claims test" formulated by the Eleventh Circuit to evaluate whether a nonsignatory could compel arbitration. 210 F.3d at 527-28.

[3] In *Big Foot*, the Fifth Circuit left open the question of whether the insurer was entitled to a discretionary stay, as opposed to a mandatory stay under section 3 of the FAA. 887 F.2d at 614.

As an initial matter, it is necessary for the Court to clarify its holding in the December 9, 2015 Order and Reasons. Much of the parties' memoranda discuss the applicability of a mandatory stay under section 3 of the FAA to the EEOC's claims. However, the Court did not issue a mandatory stay under the FAA. Therefore, the Court need not address the EEOC's discussion of whether granting a stay of the EEOC's claims under the FAA would be a manifest error of law. After consideration of the *Waste Management* factors, the Court determined that a mandatory stay under section 3 was not warranted, because the claims brought by Broussard and the EEOC were not "inherently inseparable." (Rec. Doc. 113, at 35.) However, the Court determined that the facts and claims significantly overlap and the resolution of issues in the litigation would substantially affect the arbitration. *Id.* at 35–36, 39. Accordingly, the Court issued a discretionary stay of the EEOC's claims pending the resolution of the arbitration between Broussard and Tower Loan.

When a mandatory stay under section 3 is not warranted, a court may nonetheless exercise its discretion to stay the litigation pending the outcome of the arbitration, even as to claims between nonarbitrating parties, simply as a means of controlling its docket. *Hornbeck*, 981 F.2d at 755 (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983); *Big Foot*, 887 F.2d at 614). The court's discretionary authority to issue a stay is "incidental to the power inherent in

every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *accord Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 243 (5th Cir. 2009) (citing *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.*, 761 F.2d 198, 204 n.6 (5th Cir. 1985)). A court's discretion in this area is broad, but "such control is not unbounded." *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983). "Proper use of this authority 'calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'" *Id.* (quoting *Landis*, 299 U.S. at 255). The party seeking a stay bears the burden of justifying a delay by making a "clear case of hardship or inequity in being required to go forward." *Id.* (quoting *Landis*, 299 U.S. at 255).

In its motion for reconsideration, the EEOC argues that the Court erred by failing to identify and apply the proper standards for a discretionary stay as mandated by the Supreme Court in *Landis v. North American Co.*, 299 U.S. 248 (1936), and articulated by the Sixth Circuit in *Ohio Environmental Council v. United States District Court, Southern District of Ohio, Eastern Division*, 565 F.2d 393 (6th Cir. 1977). The EEOC cited neither *Landis* nor *Ohio Environmental Council* anywhere in its opposition to Tower Loan's motion to stay the EEOC's claims. (*See* Rec. Doc. 100.) In fact, the EEOC's opposition made no mention of any standard applicable

13

to a discretionary stay. *See id.* at 15-19. As mentioned above, a motion for reconsideration "cannot be used to raise arguments that could, and should, have been made" before the order issued. *Marseilles*, 542 F.3d at 1058. Nevertheless, the Court's previous Order and Reasons cited the Supreme Court's decision in *Landis* and Fifth Circuit decisions applying it, and recognized that *Landis* controlled the determination of whether to issue a discretionary stay. (*See* Rec. Doc. 113, at 34.)

Contrary to the EEOC's assertion, the Court engaged in balancing the hardships to Tower Loan with the EEOC's concerns if a stay were granted. The Court utilized the *Waste Management* factors to guide this determination. Although the EEOC contends that the *Waste Management* factors are inapplicable to a discretionary stay, Fifth Circuit precedent holds otherwise. The Fifth Circuit has long held that "if a suit against a nonsignatory is based upon the same operative facts and is inherently inseparable from the claims against a signatory, the trial court has discretion to grant a stay if the suit would undermine the arbitration proceedings and thwart the federal policy in favor of arbitration."[4] *Hill*, 282 F.3d at 347 (citing *Sam Reisfeld & Son Imp. Co. v. S. A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976)).

---

[4] The Court notes that the situation is different here, where a stay is sought by Tower Loan, a signatory, as to claims brought against it by the EEOC, a nonsignatory; however, "the mere fact that a signatory defendant is seeking a stay against a nonsignatory plaintiff is not dispositive." *Mosaic Underwriting Serv., Inc. v. Moncla Marine Operations, L.L.C.*, No. 12-2183, 2013 WL 2903083,

14

Several courts in this circuit have relied on the factors discussed in *Waste Management* to determine whether a discretionary stay is appropriate. *See, e.g.*, *Mosaic Underwriting Serv., Inc. v. Moncla Marine Operations, L.L.C.*, No. 12-2183, 2013 WL 2903083, at *8 (E.D. La. June 12, 2013); *Suzlon Infrastructure, Ltd. v. Pulk*, No. 09-2206, 2010 WL 3540951, at *8-11 (S.D. Tex. Sept. 10, 2010); *Citgo Petroleum Corp. v. M/T Bow Fighter*, No. 07-2950, 2009 WL 960080, at *6-7 (S.D. Tex. Apr. 7, 2009); *Med-IM Dev., Inc. v. Gen. Elec. Capital Corp.*, No. 07-1618, 2008 WL 901489, at *9 (S.D. Tex. Mar. 31, 2008). In addition, other circuits have considered similar factors to determine whether to issue a discretionary stay when dealing with litigation and arbitration. *See, e.g.*, *United States ex rel. Lighting & Power Servs., Inc. v. Interface Const. Corp.*, 553 F.3d 1150, 1156 n.5 (8th Cir. 2009) ("Even when a claim or issue is not subject to an agreement to arbitrate, 'the district court has discretion to stay third party litigation that involves common questions of fact that are within the scope of the arbitration agreement.'"). In short, *Landis* expresses general concerns about a court's inherent power to stay cases; *Waste*

---

at *5 (E.D. La. June 12, 2013). It is true that, in deciding motions to compel, courts have distinguished between allowing a nonsignatory to enforce an arbitration agreement against a signatory and allowing a signatory to enforce an arbitration agreement against a nonsignatory. *Id.* "In deciding a motion to stay litigation pending arbitration as opposed to a motion to compel arbitration, however, the courts have applied similar factors when the stay is sought by a nonsignatory as to claims involving a signatory, as in *Waste Management*, or by a signatory as to claims involving a nonsignatory, as in the present case." *Id.* (quoting *Halliburton Energy Servs., Inc. v. NL Indus.*, No. 05-4160, 2007 WL 268492, at *7 (S.D. Tex. Jan. 26, 2007)).

*Management* and the Fifth Circuit's prior decisions enumerate specific factors for a court to consider when dealing with litigation and arbitration.

Considering the factors enumerated in *Waste Management*, the Court determines, as it did in the December 9, 2015 Order and Reasons, that Tower Loan has met its burden of showing hardship or inequity warranting a discretionary stay of the EEOC's claims. First, it is undisputed that the arbitrated and litigated disputes involved identical operative facts. Indeed, the EEOC has stated that the "nexus of factual circumstances central to the EEOC's claims will be those at issue in Mr. Broussard's suit against First Tower Loan, LLC." (Rec. Doc. 52, at 1.)

Second, although the claims asserted in Broussard's arbitration and the EEOC's litigation are not "inherently inseparable," as the EEOC is not seeking simply to provide make-whole relief for Broussard but also to vindicate a public interest, the facts and claims "significantly overlap." *See Suzlon*, 2010 WL 3540951, at *8 ("Even if the operative facts are not identical and the claims are not 'inherently inseparable,' the facts and claims significantly overlap. The first two *Waste Management* factors at a minimum weigh heavily in favor of a discretionary stay."). Thus, while the second factor does not weigh in favor if a mandatory stay under the FAA, it does support a discretionary stay.

16

Third, the litigation would likely have a "critical impact" on the arbitration. In this regard, the Fifth Circuit has explained that "[t]he question is not ultimately one of weighing potential harm to the interests of the non-signatory, but of determining whether proceeding with litigation will destroy the signatories' right to a meaningful arbitration." *Waste Mgmt.*, 372 F.3d at 343. Because the arbitration and litigation involve common, likely identical, questions of law and fact, resolving the EEOC's claims would resolve issues that the arbitrator will decide in Broussard's arbitration. An arbitrator may find that Tower Loan did not discriminate against Broussard based on sex and is therefore not liable for any damages. However, this Court potentially reaching the conclusion that Tower Loan violated Title VII would affect the arbitration. Given the binding effect of a federal judgment, as well as the factual similarities in Broussard's and the EEOC's claims, the arbitrator would necessarily be strongly influenced to follow the Court's determination. *See id.* at 345.

In addition, the outcome of the arbitration may benefit the parties to the litigation. Although this effect does not weigh in favor of a mandatory stay under section 3, it does support a discretionary stay. *Suzlon*, 2010 WL 3540951, at *9. In the December 9, 2015 Order and Reasons, the Court mentioned res judicata as an

example of a potential benefit.[5] Although the previous Order and Reasons referred simply to res judicata, "[t]he rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).

Collateral estoppel, also known as "issue preclusion," bars a party from relitigating an issue determined against that party in an earlier action, even if the second action differs significantly from the first one. *See Bradberry v. Jefferson Cty.*, 732 F.3d 540, 548 (5th Cir. 2013).[6] Unlike res judicata, collateral estoppel does not require mutuality between the parties in the prior action and the parties in the subsequent action. *See Allen v. McCurry*, 449 U.S. 90, 94–95 (1980). For example, offensive use of collateral estoppel occurs "when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has

---

[5] The EEOC insists that it cannot be barred by res judicata. However, "[i]t is an open question whether a settlement or arbitration judgment would affect the validity of the EEOC's claim or the character of relief the EEOC may seek." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) (noting that "ordinary principles of res judicata, mootness, or mitigation may apply to EEOC claims," though the EEOC is not a proxy for the employee). The December 9, 2015 Order and Reasons explicitly stated that the issue of res judicata was not before the Court, and therefore the Court did not determine whether an arbitration judgment would have a preclusive effect on any claims or issues in the litigation. (Rec. Doc. 113, at 38 n.7.)

[6] Collateral estoppel prevents litigation of an issue when "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision." *Bradberry*, 732 F.3d at 548. A fourth factor, namely, "whether there are any special circumstances that make it unfair to apply the doctrine," applies to offensive collateral estoppel. *Id.*

previously litigated unsuccessfully in an action with another party." *Bradberry*, 732 F.3d at 548-49 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4 (1979)).

As a general matter, "arbitral proceedings *can* have preclusive effect even in litigation involving federal statutory and constitutional rights, and the decision to apply it is within the discretion of the district court." *Grimes v. BNSF Ry. Co.*, 746 F.3d 184, 188 (5th Cir. 2014). For example, in some circumstances,[7] "collateral estoppel may apply in federal-court litigation to facts found in arbitral proceedings." *Id.* Accordingly, the potential preclusive effect of the arbitral proceedings in litigation may benefit the parties and avoid the waste of judicial resources. Therefore, for the reasons articulated in the December 9, 2015 Order and Reasons, and for the reasons stated here, the Court finds a discretionary stay appropriate.

The EEOC argues that the stay issued is indefinite and possibly permanent because there is "substantial likelihood that Mr. Broussard will not arbitrate his claims." (Rec. Doc. 114-1, at 10.) The Court granted the discretionary stay of the EEOC's claims

---

[7] The Fifth Circuit explained that a district court has "broad discretion" to decide whether to apply collateral estoppel, "at least when the arbitral pleadings state issues clearly, and the arbitrators set out and explain their findings in a detailed written opinion." *Grimes*, 746 F.3d at 188. Before applying the doctrine, the court must consider the "federal interests warranting protection." *Id.* Additionally, the court "must carefully consider whether procedural differences between arbitration and the district court proceeding might prejudice the party challenging the use of offensive collateral estoppel." *Id.* The arbitrators also ought to be "experienced and disinterested individuals." *Id.*

under the assumption that Broussard intended to proceed with his claims against Tower Loan in arbitration, and there is no reason to believe that Broussard does not wish to do so. Nevertheless, Broussard is free to decline to ever participate in arbitration and may voluntarily dismiss his claims at any time.

Although the Court finds a discretionary stay is warranted, the Court recognizes that such a stay must have a reasonable time limit. *See Landis*, 299 U.S. at 257. Before granting a discretionary stay, a court "must carefully consider the time reasonably expected for resolution of the 'other case,' in light of the principle that 'stay orders will be reversed when they are found to be immoderate or of an indefinite duration.'" *Wedgeworth*, 706 F.2d at 545.

The Court will modify the discretionary stay previously entered so that "its force will be spent within reasonable limits." *Id.* The Court finds six months to be a reasonable amount of time to complete the arbitration. *See* American Arbitration Association, Representing Yourself in Employment Arbitration: An Employee's Guide, at 4 (2013), https://www.adr.org/aaa/ShowPDF?doc=ADRSTAGE2 011225 ("Most employment disputes are resolved between 120-180 days. The average length for all arbitration matters through the AAA is about 4.5 months."). Accordingly, the EEOC's claims shall be stayed pending completion of the arbitration between Broussard and Tower Loan within six months, unless good cause be shown for an extension of the stay. This is not to say that the EEOC is

precluded from requesting that the Court reconsider lifting the stay, which it is free to do at any time. In addition, the Court will allow counsel in this case to submit status reports on the ongoing arbitration, if counsel feel that such a submission will be helpful to the Court.

<u>**CONCLUSION**</u>

Accordingly,

**IT IS HEREBY ORDERED** that the Equal Employment Opportunity Commission's *Motion to Alter, Amend, or Reconsider Order Staying EEOC's Claims* **(Rec. Doc. 114)** is **DENIED.**

**IT IS FURTHER ORDERED** that the discretionary stay of the Equal Employment Opportunity Commission's claims previously entered in this matter is **MODIFIED** as follows: The Equal Employment Opportunity Commission's claims are **STAYED** pending completion of the arbitration between Tristan Broussard and First Tower Loan, LLC within <u>six (6) months</u> from the date of this order, unless good cause be shown for an extension. The parties shall advise the Court in writing upon completion of the arbitration.

New Orleans, Louisiana, this 7th day of March, 2016.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

21