# REPLACEMENT EXHIBIT

for
Plaintiff's Notice of Arbitration Decision

TRISTAN BROUSSARD,                              ARBITRATOR: J. WILLIAM MANUEL
        Claimant,

VERSUS

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
        Respondent.

## AWARD AND OPINION OF ARBITRATOR

I, the undersigned Arbitrator, having been designated in accordance with the Arbitration Agreement entered into by the above-named parties; having been duly sworn; having heard the proofs; and considered the allegations of the parties, hereby issue this Reasoned Opinion and Award.

After considering the testimony of all the witnesses, and where appropriate, having considered their relative credibility, and having carefully reviewed the exhibits introduced into evidence and the post-hearing briefing, all in light of the applicable law governing these issues, I find as follows:

This is an action brought by Claimant Tristan Broussard ("Broussard" or "Claimant") against ▉▉▉▉▉▉▉▉▉▉▉▉ ("▉▉▉▉▉▉" or "Respondent") alleging that ▉▉▉▉▉▉ violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e by engaging in sex discrimination. On December 10, 2015, the United States District Court for the Eastern District of Louisiana granted ▉▉▉▉▉▉'s Motion to Compel Arbitration. The arbitration hearing was conducted over a period of two and a half days, September 7 – 9, 2016.

In early spring of 2013, Broussard applied for and was hired by ▉▉▉▉▉▉ for the position of Manager Trainee in ▉▉▉▉▉▉'s Lake Charles, Louisiana office. During the hiring process, Broussard presented as a male with patchy facial hair and a coat and tie. At some point early in his time with ▉▉▉▉▉▉, Broussard was required to submit a drivers' license. That license represented that Broussard was female. Numerous discussions within ▉▉▉▉▉▉ soon ensued

1

and culminated with a March 11, 2013, meeting between Broussard, ▆▆▆▆ (the Lake Charles branch manager), and ▆▆▆▆ (Senior Area Supervisor) during which, Broussard was presented with a memo including the following language:

> I understand that my preference to act and dress as a male, despite having been born a female, is not something that will be in compliance with ▆▆▆▆'s personnel policies.
>
> I have been advised as to the proper dress for females and also have been provided a copy of the female dress code. I also understand that when meetings occur that require out of town travel and an overnight room is required, I will be assigned to a room with a female.

▆▆▆▆'s Director of Human Resources and Executive Vice President, ▆▆▆▆ testified that she was involved in the drafting of this memo along with input from corporate counsel. Broussard was told that he needed to follow the instructions within the memo and sign it. Broussard stated that he could not comply with the policy, but was told in the meeting to take the day off and think about it. Broussard left the building, but did not return to ▆▆▆▆ the next day. In a telephone conversation with ▆▆▆▆, Broussard stated that he could not comply with the policy presented to him and therefore he would not be returning to work.

### SEPARATION OF EMPLOYMENT WITH ▆▆▆▆

It is undisputed that Broussard never returned to ▆▆▆▆ after leaving the office on March 11, 2013. The Claimant alleges that he was involuntarily terminated during the March 11, 2013. In the alternative, the Claimant argues that he suffered a constructive discharge as a result of the policies imposed upon him by the corporate office. The Respondent argues that Broussard voluntarily abandoned his employment and that the circumstances cannot be construed to meet the standard of a constructive discharge.

Based upon the testimony, I find that Broussard was not involuntarily terminated in the March 11, 2013 meeting. However, I do believe that the testimony and documents presented at

the hearing show that Broussard meets the standard of a constructive discharge. The briefing on this issue was very well-done on both sides, but in the end, I believe that the facts show that Broussard involuntarily resigned in order to escape an intolerable and illegal employment requirement imposed by the corporate office–that he act and dress only as a female pursuant to ▮'s personnel policies. With regard to the argument that Broussard did not properly use a grievance procedure, I find that his discussions with his branch manager and senior area supervisor are sufficient to meet that factor, should a court deem that it apply.

## "BECAUSE OF" SEX

In order to support a claim for sex discrimination, Broussard must prove that he suffered an adverse employment action because of his sex. As noted in my Order on the cross-motions for summary judgment and defendant's motion to strike, the Fifth Circuit has not yet ruled that discrimination based solely on an employee's status of being transgender or going through transgender transition is a per se violation of Title VII. And although there was ample testimony about the condition of gender dysphoria, Broussard's complaint does not make a claim that he was discriminated against for suffering from that condition. Instead, we must look to see if ▮ ▮'s actions and statements support a claim for sex discrimination under the current statutory interpretation of Title VII by the Fifth Circuit.

In doing so, it is my opinion that the United States Supreme Court's decision in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) provides proper guidance. In Price Waterhouse, the Court held that Congress "intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." Id. at 251. Further, the Court noted that as a country, we are "beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group." Id. In a later case, addressing an argument that Congress did not contemplate a certain type of sex discrimination theory when

3

passing Title VII, the Supreme Court noted that "statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 79 (1998).

The Fifth Circuit recently affirmed that gender-stereotyping can be the basis for a claim under Title VII. In EEOC v. Boh Bros. Const. Co., LLC, 731 F.3d 444, 454 (2013), the Court talked about the Price Waterhouse decision and went on to state that "numerous courts, including [the Fifth Circuit], have recognized that a plaintiff can satisfy Title VII's because-of-sex requirement with evidence of a plaintiff's perceived failure to conform to traditional gender stereotypes." Therefore, we must look to see if the proof showed that ▮ acted on a perception that Broussard failed to conform to traditional gender stereotypes.

The testimony, memo and emails presented at the hearing clearly show that, after learning that Broussard's driver's license stated female, ▮ began to act in a manner showing that it perceived Broussard did not comply with the traditional gender stereotypes of a female. The memo, drafted by ▮ with advice from counsel and presented to Broussard on March 11, 2013, states that by acting and dressing in a manner other than like a female, Broussard would be in violation of ▮'s personnel policies. Therefore, ▮'s corporate office insisted that he match the stereotype associated with female. That is a violation of Title VII, under both Price Waterhouse and Boh Bros. Broussard has met the "because of sex" standard to support his claim for sex discrimination under Title VII.

## DAMAGES
### Economic Damages

Broussard claims that he is entitled to over $100,000 in back pay. The testimony and documentation, however, show some major issues with Broussard's mitigation of damages. The

4

most troubling testimony was that Broussard left a subsequent job at Mark Dodge where he made over $26,000 in eleven months to take a position at Blaze Smoke Shop for $8 per hour. There was no testimony that he was asked to leave Mark Dodge and no credible reason as to why he would leave a position that put him almost at the same position as a Manager Trainee at ▮▮▮▮. In addition, Broussard's job search attempts have been hindered by his own failure to maintain a valid driver's license. These issues also affect the analysis for front pay damages. In addition, his brief sojourn at ▮▮▮▮ affects the amount of future pay, if it were to be awarded. As such, I adopt the arguments of the Respondent on those issues and hereby award Broussard $43,162 in economic damages.

Emotional Distress Damages

Broussard also seeks $125,000 in emotional distress and mental anguish damages. This figure is allegedly based upon his testimony that his constructive discharge from ▮▮▮▮ caused him to be upset. There was also testimony, from Broussard and his former girlfriend, that he suffered from mental anguish and emotional distress prior to ever having worked at ▮▮▮▮. Recognizing that he did suffer some mental anguish from his brief time with ▮▮▮▮, I am awarding $10,000 in emotional distress damages and no proof regarding that issue was presented at the hearing.

This Award and Opinion is in full settlement and determination of all claims of liability and damages submitted to this Arbitration.

The Claimant's post-hearing brief did not seek punitive damages.

_/s/ J. William Manuel_
Arbitrator J. William Manuel

5